Harry MERSAY, etc., Plaintiff,

v.

FIRST REPUBLIC CORPORATION OF AMERICA et al., Defendants.

Max LICHTMAN, etc., Plaintiffs,

v.

FIRST REPUBLIC CORPORATION OF AMERICA et al., Defendants.

Nos. 63 Civ. 2174, 64 Civ. 731.

United States District Court
S. D. New York.

Jan. 22, 1968.

Herman Odell, New York City, for plaintiffs; Seymour H. Bucholz, New York City, of counsel.

Mermelstein, Burns & Lesser, New York City, for plaintiffs Lichtman; Jay D. Fischer, New York City, of counsel.

Shea, Gallop, Climenko & Gould, New York City, for defendant First Republic Corporation of America; Ralph L. Ellis,

Norman Friedman and Bruce A. Hecker, New York City, of counsel.

Leonard I. Schreiber, New York City, for defendant Ira Sands.

Kramer, Bandler & Labaton, New York City, for defendants George Gewanter, Jerome Wishner, Morris Cohon, Morris Cohon & Co. and Charles J. Cohl; Sidney Kramer and Edward Labaton, New York City, of counsel.

Weisman, Celler, Allan, Spett & Sheinberg, New York City, for defendant Milton H. Bernstein; Milton C. Weisman, O. John Rogge and David Jaffe, New York City, of counsel.

METZNER, District Judge:

The question to be decided here is whether plaintiff Mersay may maintain a class action under the provisions of Fed. R.Civ.P. 23.

Mersay sues on his own behalf and on behalf of "others similarly situated" to recover damages allegedly suffered in connection with purchases of and exchanges for stock of the defendant First Republic Corporation (herein F–R). The suit is based upon alleged violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), SEC Rule 10b–5, and §§ 11 and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77q. In essence, Mersay's complaint alleges misrepresentations of material facts and material omissions contained in two registration statements and prospectuses issued by F–R, dated May 16, 1961 and March 27, 1962, respectively, as well as in certain other written communications issued by F–R.

The registration statement and prospectus of May 16, 1961 covered the issuance of 1,985,712 shares of Class A common stock, of which 220,000 shares were sold to the public and 1,758,712 shares were sold pursuant to an exchange offer to holders of interests in partnerships and corporations which owned fee or leasehold estates in real estate.

The registration statement and prospectus of March 27, 1962 covered the issuance of $9,400,000 6½% convertible subordinated debentures and 188,000 additional shares of Class A common stock which were sold to the public.

Mersay purchased 1,000 shares of Class A stock in the open market on April 5, 1962. Count 1 in the complaint embraces this purchase and alleges reliance upon both registration statements and prospectuses.

Mersay acquired 3,001 shares of Class A stock on June 15, 1961 as an exchange offeree, in return for certain units in real estate syndicates. Count 2 in the complaint embraces this transaction and the March 27, 1962 registration statement and prospectus.

Rule 23 sets forth the requirements for maintaining a class action, which, insofar as this case is concerned, may be summarized as follows:

(1) Joinder of all members of the class must be impossible because the class is so numerous.

(2) There must be questions of law and fact common to the class which predominate over questions affecting only individual members of the class.

(3) The claims of the plaintiff must be typical of the claims of the class.

(4) The plaintiff must show that he will fairly and adequately protect the interests of the class.

(5) The class action must be found superior to other means available for the fair and efficient adjudication of the dispute.

There is apparently no dispute as to (1), that portion of (2) requiring common questions of law and fact, or (5). It is urged by defendants, however, that Mersay's claims are not typical of the class, that he cannot fairly and adequately protect the interests of the class, and that the common questions of law and fact will not predominate over individual claims.

468

## I. Are Mersay's Claims Typical of the Claims of the Class?

The Advisory Committee Note accompanying amended rule 23 (39 F.R.D. 69, 99–107) does not elaborate upon the meaning of the requirement that the plaintiff's claim be "typical of the claims * * * of the class." It has been suggested that perhaps this clause "is a somewhat cryptic reference to the notion, which is still valid under the amended rule, that the representative must not have interests which conflict with those he purports to represent." 2 Barron & Holtzoff, Federal Practice & Procedure 75, n. 3 (Supp.1967).

Mersay alleges a series of misrepresentations and a course of conduct on the part of the defendants which were violative of the federal securities laws. The class he claims to represent is composed only of other persons like himself, who bought F–R stock or exchanged units in syndicates for F–R stock either in reliance upon those misrepresentations or— in the case of the § 11 claim—under the registration statements alleged to have been defective. He alleges no facts or legal arguments peculiar to himself. Rather, he alleges a "common nucleus of operative facts" applicable to the class as a whole. Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 726 (N.D.Cal. 1967); Dolgow v. Anderson. 43 F.R.D. 472 (E.D.N.Y.1968).

Defendants contend that Mersay's interests are not typical of the class because they are in conflict with those of some or all of the members of the class he purports to represent. They claim that Mersay's former associations in business ventures with defendants Sands, Wishner and Gewanter, both prior to the formation of F–R and thereafter, make him an insider and therefore incapable of representing the class of innocent shareholders not so involved. Reference is also made to his membership on a so-called Executive Advisory Board of F–R, in which capacity his name appeared in the prospectuses and in other brochures issued by F–R. Admittedly, this board never met.

 There seem to be three separate grounds for this claim. The first of these is that, because he was an insider, Mersay's interests are for that reason alone inimical to the interests of the other shareholders. Defendants cite cases such as Carroll v. Associated Musicians of Greater New York, 316 F.2d 574 (2d Cir. 1963); Giordano v. RCA, 183 F.2d 558 (3d Cir. 1950), and Associated Orchestra Leaders of Greater Philadelphia v. Philadelphia Musical Soc., etc., 203 F. Supp. 755 (E.D.Pa.1962). In each · of these cases, the class action was dismissed because there was a substantial conflict within the class over the very issue in litigation. This is what is meant by conflict. Redmond v. Commerce Trust Co., 144 F.2d 140 (8th Cir. 1944); Dawson v. Delaney, 189 F.Supp. 416 (D.Del. 1960). See 2 Moore, Federal Practice 255, n. 25 (Supp.1966). Even if Mersay was an insider, the interests he is asserting in this lawsuit are his interests as a defrauded shareholder. Those interests are not in any way antagonistic to or in conflict with the interests of the class, and do not affect the typical issues which are the subject of the lawsuit. Mersay's status as an insider may defeat his individual claim, just as other claimants' right to recover may be defeated by other defenses.

 The second ground upon which it is asserted that Mersay's interests are inimical to those of the class is based on his claim that properties of some of the syndicates whose units he exchanged for F–R stock were overvalued in the prospectus. Defendants argue that, since Mersay received valuable stock for these allegedly overvalued units, the exchange was to his advantage and he cannot represent exchange offerees of different syndicate units or cash purchasers who may have been injured by the alleged misrepresentations. However appealing this argument may be in attempting to show that Mersay individually suffered

no loss, it is impossible to see how Mersay's exchange of these units makes his interests antagonistic or inimical to those of the other members of the class. At best, it makes them only weaker. They all stem from reliance upon the same prospectus.

The third ground for contending that Mersay's interests are antagonistic to those of the class is that, if there was a § 11 violation due to either of the registration statements, Mersay is himself liable under § 11(a) (2) and (3) of the 1933 act as a person "performing similar functions" to a director.

The authorities have not had occasion to consider the precise meaning of the phrase "performing similar functions" to a director. Most probably, this phrase is concerned with imposing liability upon the person who is actually directing the affairs of the corporation, but who, for the purpose of avoiding liability, shuns the formal title "director." Even considering his past relationships with the defendants and his membership on the Executive Advisory Board, Mersay was not such a person.

█ Defendants also urge that Mersay will be unable to prove that he relied upon the alleged misstatements or that he suffered any cognizable loss in his transactions in F–R stock. The common question of liability is assumed for the purpose of this argument, but the very assumption negatives the argument. Thus, while Mersay's claims may be typical of the class on the question of liability, defendants would deny his claims are in fact typical because Mersay may not be able to prove reliance or damages. This contention goes to individual substantive disputes that should await trial. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964). If Mersay were required to prove his own reliance or damages at this stage, it would follow that no class action could stand until the plaintiff proved every material element of his individual claim.

Clearly, such a procedure was not envisioned under rule 23.

The court has considered the advisability of a preliminary hearing on the points raised by defendants which have been discussed so far. Cf. Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968). In this case such a hearing would be a fact-finding procedure that would deprive the plaintiff and the class of the right to a jury trial. It would turn rule 23 into a cumbersome procedure. I cannot conceive that the drafters of the rule intended necessarily extensive hearings to determine facts which may be ultimate to the litigation.

Mersay's claims are typical of the claims of the class and his interests are not antagonistic to those of the class.

II. Will Plaintiff Adequately Represent the Class?

█ Aside from the issue of plaintiff's loss, most of the contentions of defendants center around the question whether Mersay can "fairly and adequately protect the interests of the class." It has recently been held that the requirement of adequate representation comprises only two elements: (a) that the interests of the representative party must coincide with those of the class; and (b) that the representative party and his attorney can be expected to prosecute the action vigorously. Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968). Both questions are left to the discretion of the court based upon the facts and circumstances of each case. Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir. 1941); Pelelas v. Caterpillar Tractor Co., 113 F.2d 629 (7th Cir. 1940).

The issue of any possible antagonism between Mersay's interests and those of the class has already been dealt with above.

█ The proper inquiry is not merely whether plaintiff is a suitable representative, in that his background and relationships might defeat his re-

covery, but whether he will in fact adequately protect class interests. The defendants' arguments tend to show only that Mersay is not representative in the sense that he was not the average, uninformed investor in F–R shares. These arguments do not destroy plaintiff's claim that he and his counsel can and will assure due process for the interests of the class. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). They do not show that Mersay's interests are not coextensive with those of the other purchasers of F–R stock. See Barbot v. Frackman, 191 F.Supp. 171 (S.D. N.Y.1961); 3 Moore, Federal Practice 3425 (2d ed. 1967). They do not show that, in asserting his own interests, Mersay will not at the same time be able to assert all the interests of the class. Yet these are the criteria that in the past have been deemed important in the determination of adequate representation. Weeks v. Bareco Oil Co., 125 F.2d 84 (7th Cir. 1941); Booth v. General Dynamics Corp., 264 F.Supp. 465 (N.D.Ill. 1967); Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966); Brennan v. Midwestern United Life Ins. Co., 259 F.Supp. 673 (N.D.Ind.1966); City of Chicago v. Allen Bradley Co., 32 F.R.D. 448 (N.D. Ill.1963); Pelelas v. Caterpillar Tractor Co., 30 F.Supp. 173 (S.D.Ill.1939), aff'd 113 F.2d 629 (7th Cir.), cert. denied 311 U.S. 700, 61 S.Ct. 138, 85 L.Ed. 454 (1940). See also 2 Barron & Holtzoff, Federal Practice & Procedure 306–07 (rev. ed. 1961).

■ These authorities indicate clearly that the primary criterion is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class, so as to insure them due process. From his efforts exhibited so far in prosecuting this lawsuit, I conclude that the present plaintiff will give such vigorous representation.

Defendants also make much of the fact that, except for a separate action brought by plaintiffs named Lichtman, which has been consolidated with the Mersay suit, no other members of the purported class have shown any interest in intervening in the action in the four years it has been pending. Under the old rule 23, such lack of interest in the action on the part of other members of the class was often mentioned as a ground for striking the class nature of suits. E. g., Quirke v. St. Louis-San Francisco Ry. Co., 277 F.2d 705 (8th Cir. 1960); Crawford v. Texaco, Inc., 40 F.R.D. 381 (S.D. N.Y.1966); Polakoff v. Delaware Steeplechase & Race Ass'n, 264 F.Supp. 915 (D.Del.1966). Even under the new rule, some reference has been made to this factor. Hohmann v. Packard Instrument Co., 11 F.R.Serv.2d 23a.52, Case 1 (N.D. Ill.1967); Berger v. Purolator Prods., Inc., 41 F.R.D. 542 (S.D.N.Y.1966). In contrast, at least one decision in which the class action was upheld noted that no member of the class had ever *objected* to plaintiff's representation. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964).

■ Under the former rule 23, the primary reason for placing emphasis upon plaintiff's inability to secure other members of the class to join or intervene was apparently that the "spurious" class action was little more than a device for "permissive joinder;" anyone who did not intervene as a party was not bound. Lipsett v. United States, 359 F.2d 956, 959 (2d Cir. 1966); Nagler v. Admiral Corp., 248 F.2d 319, 327 (2d Cir. 1957). Thus, if no other members of the class were interested in joining, there was no reason for retaining the misleading denomination "class action," since only the named parties would have been affected by the judgment. Under the amended rule 23, however, if it is determined that there is a proper class action, every member of the class will receive notice of the suit, and unless a member elects to be excluded, he will automatically be bound by the final judgment. Therefore, the class's lack of interest in the suit prior to the time such notice is given

should not compel a determination that this is not a proper class action. See Siegel v. Chicken Delight, Inc., 271 F. Supp. 722, 728 (N.D.Cal.1967). It seems clear that plaintiff is interested enough to be a forceful advocate; the notice provisions of the new rule 23(c) will give each member of the class the chance to agree or disagree with plaintiff's representation.

## III. Do Common Questions Predominate?

It is not contested by the defendants that there are some common questions of law or fact. They do contend that such questions do not predominate over questions affecting individual members of the class. Principally, these common questions are: whether defendants made representations which were false or misleading, whether such representations were material, and whether they had any effect upon the market price. Such questions arise under both the Rule 10b–5 and the § 11 counts. Questions which are admittedly particular to each individual member of the class under the Rule 10b–5 count are: did each member learn of the misstatements, did each rely upon them, and did each suffer damages? Under the § 11 count, the defense of actual knowledge on the part of the purchaser may also be an individual question as to some members of the class. Under both sections there are individual questions as to the statute of limitations. The common questions relate to defendants' general liability. The individual questions will determine each individual's right to recovery. Normally the class action is ideal for the purpose of affording redress of the kinds of wrongs alleged in this complaint. The economics of the situation calls for it, since individual stockholders rarely suffer damage in an amount that will justify the retention of counsel to prepare and litigate the complex questions involved.

Defendants particularly urge that variations in proof of reliance will predominate over the common questions. Rule 10b–5 cases always involve variations in the kind and degree of reliance of each individual investor. But such variations are rarely so substantial as to defeat the class action. See Kronenberg v. Hotel Gov. Clinton, 11 F.R.Serv.2d 23b.3, Case 4 (S.D.N.Y.1967) (so construing the Advisory Committee Note to rule 23). In these Rule 10b–5 actions, proof of reliance has usually been considered an individual question which would require separate proof by each claimant only after determination of the common questions. See Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 915 (9th Cir. 1964); Oppenheimer v. F. J. Young & Co., 144 F.2d 387 (2d Cir. 1944); Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y.1966); Elliott v. Federal Home Loan Bank Bd., 233 F.Supp. 578 (S.D.Cal.1964). In addition, the Court of Appeals for the Second Circuit has recognized the utility of the class action device in § 11 cases, noting that the major issue in such cases, the truth or falsity of the registration statement, is one common to all investors. Escott v. Barchris Constr. Corp., 340 F.2d 731 (2d Cir. 1965). As Professor Loss has stated: "The ultimate effectiveness of the federal remedies * * * may depend in large measure on the applicability of the class action device." 3 Loss, Securities Regulation 1819 (2d ed. 1961). I find that in this case the common questions will predominate over the individual questions.

This action is properly maintained as a class action. Counsel will arrange for a conference with the court to discuss compliance with subsection (c) (2) of rule 23. So ordered.