108

George H. ENTIN, on behalf of himself and all others similarly situated

v.

Herbert BARG et al.

Civ. A. No. 71-2920.

United States District Court, E. D. Pennsylvania.

June 19, 1973.

David Berger, Leonard Barrack, Philadelphia, Pa., for plaintiff.

Morgan, Lewis & Bockius, Donald A. Scott, Dechert, Price & Rhoads, George J. Miller, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

This case arises under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.[1] Before us is plaintiff's motion for class action determination. Plaintiff is an individual who, after discussing the matter with his stockbroker, and after reading the prospectus of defendant Aldon Industries, Inc. (Aldon) issued in connection with a public offering of its stock on February 13, 1969, purchased 200 shares of Aldon on March 27, 1969, at $22 per share. On July 15, 1969, plaintiff sold these shares at $12.-75 per share. The market for Aldon stock continued its rapid decline. On February 1, 1970, the stock was delisted from the American Stock Exchange,[2] and in over-the-counter trading thereafter, during the pendency of this litigation, the stock has been selling in the range of $4 to $5 per share.

Defendants are all connected with Aldon: Herbert Barg as board chairman and chief executive officer, Bernard Barg as president, Alvin Barg as vice-president,[3] Arthur Andersen & Co. as auditor, and Marilyn and Elaine Barg as trustees of substantial blocks of Aldon stock. The defendants other than Arthur Andersen & Co. are alleged to have sold some 400,000 shares of Aldon common stock[4] for an amount in excess of $8,000,000 in connection with the public offering.

The gravamen of plaintiff's complaint is that the defendants' registration statement and prospectus (count 1 of the complaint) and certain reports and financial statements released thereafter (count 2 of the complaint) were false and misleading or failed to state material facts concerning Aldon, in violation of section 10(b) of the Securities Exchange Act of 1934 and rule 10b–5 promulgated thereunder.[5] The complaint alleges that

1. More specifically, the plaintiff asserts that the defendants have violated sections 10(b) and 13(a) of the Act, 15 U.S.C. §§ 78j(b) and 78m(a), and rules 10b–5, 13a–3, and 13a–13 adopted pursuant to the Act.

2. The delisting did not stem from the substance of this action, but resulted from the failure to meet the requirements of the American Stock Exchange.

3. Herbert, Bernard, and Alvin Barg are alleged to be "controlling persons" within the meaning of 15 U.S.C. § 78t.

4. As part of the public offering, Aldon sold 150,000 shares and the Bargs, as individuals and trustees, sold 250,000 shares.

5. More specifically, the complaint alleges that defendants: (1) misrepresented the earnings history of Aldon by presenting comparative operating results in a confusing, ambiguous, and misleading manner; (2) failed to disclose the net income per share for each Aldon common share for certain specified periods before the prospectus, which was necessary to a meaningful comparison of the fiscal years and periods presented; (3) failed to disclose that Aldon had accumulated substantial inventories which could be liquidated only at substantial losses; (4) failed to disclose that certain product lines and styles included in Aldon's inventory were subject to changes in consumer preferences and therefore could be liquidated only at substantial losses; (5) misrepresented and failed to adequately disclose Aldon's financial condition, including its inventory and earnings; (6) failed to disclose that, since Aldon factored and assigned substantially all of its receivables, the operating results and net income could be seriously affected by any upward variations in the prime interest rate; (7) failed

the misrepresentations and omissions are material and that they include matters which, if they had been fully disclosed, would have shown that Aldon's financial and operating condition was far worse than was being publicly represented. Although plaintiff purchased his stock from one of the underwriters and not in the after-offering market, the plaintiff contends that the misrepresentations and omissions were part of a continuing conspiracy and common scheme among all of the defendants which resulted in an inflated market price for Aldon stock. Therefore, even though plaintiff sold his shares on July 15, 1969, he has asked us to frame the class in terms of all the purchasers of Aldon's stock between February 13, 1969, and February 1, 1970.

Before a class action may be maintained under F.R.Civ.P. 23, there must be a showing that:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition to the foregoing prerequisites of rule 23(a), the class proponent must satisfy one of the three conditions of rule 23(b); the plaintiff relies upon rule 23(b)(3), which requires a finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

■ We have studied with great care the ten excellent briefs and memoranda submitted by counsel. We have also reviewed the pleadings in the case and have reflected again upon the considerations raised at oral argument on the motion. Defendants strenuously contend that the rule 23(a) prerequisites to a class action are lacking (except for the numerousness of the class), and in addition that discovery thus far has demonstrated that plaintiff's allegations are unsupported and lacking in merit, and that in such a situation, regardless of other considerations, a class should not be formed, or at least should be deferred pending further discovery. However, we have concluded that plaintiff's motion should be granted, and that a class should be framed consisting of those who purchased Aldon stock between February 13, 1969, and February 1, 1970. The findings which support that conclusion and the caveat which accompanies it follow.

to disclose that, since Aldon was constructing various extensions to existing physical facilities which would require mortgage financing, operating results would be seriously affected by any upward variations in the interest rates for such mortgage financing; (8) failed to disclose that during the seventy-day period prior to the public offering the prime interest rate increased on three occasions, thus affecting all the borrowing with an inevitable concomitant adverse impact on its earnings; (9) failed to disclose that both the federal reserve discount rate and the prime rate increased within sixty days prior to the offering with a serious adverse impact upon Aldon's earnings prospects; (10) failed to disclose that Aldon planned an extensive and costly advertising compaign which would have a serious adverse impact on earnings; (11) failed to disclose in the registration statement and prospectus the operating results for the nine fiscal months ending November 3, 1968; (12) failed to disclose that the Board of Directors' approval of a change in the company's fiscal year effective some seven weeks prior to the public offering would have a substantially material and misleading effect on the comparative operating results reported in the registration statement and prospectus; and (13) failed to disclose that substantial amounts of plant and equipment were either physically or economically obsolete at the time of the public offering.

In terms of the rule 23 criteria, we first find that the class is so numerous that joinder of all members is impracticable. Plaintiff has alleged (and defendants have not denied) that there were approximately 1330 common shareholders of Aldon during at least part of the relevant period. We feel that this uncontradicted allegation is specific enough to satisfy the numerousness requirement, for failure to give the exact number in the proposed class does not defeat a motion for a class action determination, so long as the proposed class is not amorphous. Fischer v. Kletz, 41 F.R.D. 377, 384 (S.D.N.Y.1966). We also find that there are questions of law and fact common to the class, that the claims of the representative party are typical of the class, that the representative party will fairly and adequately protect the interests of the class, that common questions of law and fact predominate, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[6]

To a large extent, defendants' opposition to a class action determination stems from their belief that we are dealing with not one but two distinct classes, the first comprising those persons who bought from the underwriters in the initial offering pursuant to the registration statement and prospectus, and the second being those investors who purchased in the after-offering market, up to and including February 1, 1970.[7] In terms of rule 23, this belief translates into objections as to the existence of common questions of law or fact, the predominance of common questions over individual questions, and the typicality of the claims raised by the representative's case. Defendants argue that those who purchased Aldon stock pursuant to

the public offering would have relied, in large measure, on the prospectus and registration statement, while after July 15, 1969 (the date Entin sold his stock), there were available to the purchasing public many other documents prepared by Aldon, such as quarterly and annual earnings reports, upon which those people may have relied without ever seeing the prospectus or registration statement.

As articulated at oral argument and in their briefs, much of defendants' objection as to the lack of common questions and predominance turns on the issue of reliance. Defendants contend that there is wide disparity between members of what they consider to be two distinct classes (and even within members of each) as to the factors upon which they relied and the extent of reliance with respect to their individual purchases of stock. In view of this approach, we elect to discuss at the outset the role of reliance in cases arising under section 10(b) of the Securities Exchange Act and under rule 10b–5. Resolution of defendants' contentions turns in part on whether reliance is a necessary element of a claim for damages in actions of this type.

Plaintiff argues that under the decisions in Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Kohn v. American Metal Climax, Inc., 458 F.2d 255 (3d Cir. 1972); and Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), reliance is not an essential element of a claim for damages under section 10(b) and rule 10b–5, and that only the materiality of the misrepresentation or omission need be proved. *Mills* was a case involving misleading

6. There is relatively little dispute about the fulfillment here of the last of these criteria.

7. At oral argument, the defendants other than Arthur Andersen & Co. evinced no

objection to formulation of a class comprised of those who purchased as a result of the registration statement and prospectus.

proxy statements under section 14 of the 1934 Act. The Supreme Court held that actual reliance on the defect in the proxy statement need not be shown but only that the misrepresentation or omission was material in the sense that "the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." Mills v. Electric Auto-Lite Co., *supra*, 396 U.S. at 384, 90 S.Ct. at 621. In *Kahan* and *Kohn*, both 10b–5 cases, the Third Circuit held that the materiality test announced in *Mills* satisfied the reliance "requirement" in those fact situations. *Kahan* was a tender offer case in which injunctive relief was sought, while *Kohn* involved proxy violations. *Affiliated Ute Citizens* was a 10b–5 action for damages arising from the actions of bank employees who induced Indians to sell their stock at less than the true market price and without informing them that the employees were making a market for the stock and earning commissions and other compensation for themselves and the banks. The Supreme Court held that "positive proof of reliance is not a prerequisite to recovery" in a nondisclosure case and stated:

> All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. [citations omitted.]

406 U.S. at 153, 92 S.Ct. at 1472.

The case before us, like *Mills, Kohn,* and *Affiliated Ute Citizens,* alleges primarily omissions or failures to disclose relevant financial information in addition to some allegations of affirmative misrepresentations. The Court in *Mills* noted that "reliance on the *nondisclosure* of a fact is a particularly difficult matter to define or prove . . . ." 396 U.S. at 382 n. 5, 90 S.Ct. at 620. It would appear that to require reliance on nondisclosure of material fact would ascribe to investors a business acumen far beyond that possessed by a substantial proportion of buyers and sellers of securities. Furthermore, in a case of either misrepresentation or nondisclosure, the only direct conscious reliance may be by one in the business of investment counseling, and the actual buyer or seller may only be relying on his adviser's expertise or the "glowing reports" of a successful business engendered by the fraud leading to an inflated market. In these situations, it would appear to frustrate the intent of the securities laws to require actual reliance on particular misrepresentations or nondisclosures. *See* Kohn v. American Metal Climax, Inc., *supra*, 458 F.2d at 270, 288–291 (Adams, J., concurring).

■ Notwithstanding the foregoing discussion, it is not entirely settled how reliance is to be treated in a 10b–5 class action nondisclosure case. But, even if the defendants are correct in asserting that reliance is a necessary ingredient of a class action, we agree with Judge Metzner's observation in Mersay v. First Republic Corp., 43 F.R.D. 465, 471 (S. D.N.Y.1968), that "[r]ule 10b–5 cases always involve variations in the kind and degree of reliance of each individual investor." In Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir. 1972), the court categorized the cases dealing with the existence of a reliance requirement in rule 10b–5 class action cases. None of *Korn's* five categories of cases allows the reliance problem to block an otherwise proper class action; they either allow individual hearings on reliance, or infer reliance from materiality or course of conduct or related proofs, or dispense with the requirement altogether. Tober v. Charnita, Inc., 58 F.R.D. 74, 83 (M. D.Pa.1973), infers reliance from materiality. *Accord,* In re Caesars Palace Securities Litigation, M.D.L. No. 110, 360 F.Supp. 366 (E.D.Pa.1973). Indeed, the weight of authority is that variations in the manner of reliance do not defeat the class action, and if reliance is a prerequisite to recovery, it may properly be the subject of a separate trial, as is

common in bifurcated trials on liability and damages. Mersay v. First Republic Corp., *supra;* Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968) (Kaufman, J.); In re Penn Central Securities Litigation, 347 F.Supp. 1327 (E.D.Pa.1972) (Lord, C.J.). We follow that authority and so hold here. It follows that even if individual questions of reliance might predominate over common questions of reliance, a class action can be appropriate.

The second attack directed to the issue of common questions stems from the contention that the operative facts relating to the alleged misrepresentations and omissions in the registration statement and prospectus differ from those involved in the later SEC filings in quarterly and annual reports. The benchmark for resolution of this issue is whether there is a "common nucleus of operative facts." Green v. Wolf Corp., *supra;* Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968).

In this regard, we are reminded that section 10(b) of the Act makes it unlawful to use or employ any manipulative or deceptive device or contrivance in contravention of the rules or public interest. While rule 10b–5(2) proscribes the use of false or misleading statements, 10b–5(1) and (3) are not so limited and make it unlawful "to employ any device, scheme, or artifice to defraud" or "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." As we view the complaint (see note 5), it clearly alleges a consistent and related pattern of deceptive conduct which, if proven, would operate as a fraud. There is a common skein linking the pre- and post-registration representations and omissions thus satisfying the "common nucleus of operative facts" test.

■ Our finding that this case falls within the parameters of Green v. Wolf, *supra,* and Fischer v. Kletz, *supra,* as one in which common questions on the issue of liability predominate, emerges not only from the legal principles articulated in those cases, but also from the similarity of their facts. In *Green* the plaintiff purchased stock after a third prospectus had been issued. He was nonetheless held entitled to represent the class of all persons who purchased prior to the third prospectus as well as after. It appeared to the court in that case that the misstatements alleged in the first two prospectuses were also present in the third. In *Fischer* the plaintiff purchased stock in 1963 but was permitted to represent those who purchased stock during the entire three-year period extending to 1965, including those who purchased after a different financial statement had been issued. Judge Tyler observed:

> To be sure, we are not dealing here with a single alleged fraudulent misrepresentation or the issuance of a single document containing several alleged misrepresentations. Like standing dominoes, however, one misrepresentation in a financial statement can cause subsequent statements to fall into inaccuracy and distortion when considered by themselves or compared with previous statements. Such a possible close causal relationship between the various alleged misrepresentations in the Yale financial statements leads to the conclusion that members of the class are interested in "common questions of law and fact".

41 F.R.D. at 381. The same situation was presented in Siegel v. Realty Equities Corp., 54 F.R.D. 420 (S.D.N.Y. 1972), where Judge Tenney also allowed the class action. Nor is the matter affected by defendants' allegations that different statutes of limitations may apply to different members of the class. *See* Lamb v. United Security Life Company, 59 F.R.D. 44 (S.D.Iowa 1972).

■■ There is some authority typified by Greenstein v. Paul, 275 F.Supp. 604 (S.D.N.Y.1967), aff'd, 400 F.2d 580 (2d Cir. 1968), which at first blush might seem to militate against our find-

ing that there are common questions of law and fact and that they predominate over the individual claims.[8] In *Greenstein,* the court held that a shareholder who did not sell his stock was not permitted to maintain an action for damages on behalf of those who did. We believe that the holding in *Greenstein* must be limited to its facts, and that the *Greenstein* principle is applicable only to bar action by a non-seller. *Cf.* Kahan v. Rosensteil, *supra,* where a non-seller was permitted to represent shareholders who did sell in an action for injunctive relief. In any event, we believe that the more liberal views expressed in *Green* and *Fischer* are correct. In this regard, we note the court's approval in *Kahan* of the statement in Esplin v. Hirschi, 402 F.2d 94 (10th Cir. 1968), to the effect that doubtful cases should be resolved in favor of maintaining the class action. Also stemming from the defendants' belief that more than one class exists is the allegation that the plaintiff's claims are not typical of those of the class that he purports to represent. The extent to which this requirement differs, if at all, from the other requirements of rule 23(a) is unclear, especially in light of the fact that the Advisory Committee did not elaborate on the meaning of the requirement that the plaintiff's claims be typical of the class. Mersay v. First Republic Corp., 43 F.R.D. 465 (S.D.N.Y. 1968). Indeed, Professor Moore has concluded that "there is no need for this clause, since all meanings attributable to it duplicate requirements prescribed by other provisions in Rule 23." 3B J. Moore, Federal Practice ¶ 23.06–2, at 23–325 (1969). Whatever attempts have been made to inject life into the typicality requirement, *see id.,* are not at odds with our finding that there is a common nucleus of operative fact and that the typicality requirement has been satisfied in this case. These findings are consistent with the facts and consequent holdings of *Green* and *Fischer* recited above.[9]

■ Defendants' final contention, which is based upon the first wave of discovery in the case, is that plaintiff's claim is completely lacking in merit and that he cannot support it at trial. *Inter alia,* defendants contend that plaintiff's deposition shows that his purchase was made on the basis of only a broker's recommendation and two figures in the prospectus and that he neither read nor relied upon, and therefore was not misled by, any other documents in issue in the case. We reject, however, defendants' exhortations to an intrusion into the merits at this stage or a postponement of a class action determination until completion of discovery or even until the trial on liability. As Judge Adams noted in Kahan v. Rosensteil, *supra:*

> The determination whether there is a proper class does not depend on the existence of a cause of action. A suit

---

8. *See also* Bluestein v. Friedman, [1969–70 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,559, at 98,544 (S.D.N.Y.1967); Chashin v. Mencher, 255 F.Supp. 545 (S.D.N.Y.1965).

9. We distinguish the typicality notion from a still further objection asserted by defendants that plaintiff will not fairly and adequately protect the class interests. Some cases, *e. g.,* Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968), have posited an overlap between typicality and fair representation. However, we believe that what is involved in the latter concept is the requirement that the representative party and his attorney can be expected to prosecute the action vigorously. As Judge Gurfein noted in Wolfson v. Solomon, 54 F.R.D. 584 (S.D.N.Y. 1972), in many cases such as this the possibility of recovering attorney's fees will provide the sole stimulus for the enforcement of the class rights. *See also* Escott v. Barchris Constr. Corp., 340 F.2d 731, 733 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965). We acknowledge the great expertise and success of plaintiff's counsel in this field and we believe that in this case the possibility of recovering attorney's fees is sufficient stimulus for the enforcement of class rights, thus satisfying the fair representation requirement.

may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action.

And, as Judge Wisdom stated in Miller v. Mackey Int'l, Inc., 452 F.2d 424 (5th Cir. 1971):

> Rule 23 delineates the scope of inquiry to be exercised by a district judge in passing on a class action motion. Nothing in that Rule indicates the necessity or the propriety of an inquiry into the merits. Indeed, there is absolutely no support in the history of Rule 23 or legal precedent for turning a motion under Rule 23 into a Rule 12 motion to dismiss or a Rule 56 motion for summary judgment by allowing the district judge to evaluate the possible merit of the plaintiff's claims at this stage of the proceedings. Failure to state a cause of action is entirely distinct from failure to state a class action.

Agreeing with *Miller,* the court in Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973) (*Eisen III*), held that the district court was not to pass on the merits of the complaint in a class action determination.

While we have found that plaintiff's claims are typical of the class, and make a conventional, and not a conditional, class action determination herein, we add the following caveat. In Green v. Wolf Corp., *supra,* Judge Kaufman wrote:

> If the trial court finds at some convenient time that a distinction must be drawn between those who purchased at different times, it is free to make use of the flexibility available to it and so important to the proper application of Rule 23. For example, it may divide the class into subclasses (i.

e. those purchasing after issuance of the first prospectus; those purchasing after issuance of the first prospectus and circulation of the second prospectus; and those purchasing after issuance of the first prospectus and circulation of the second and third prospectuses), Rule 23(c)(4), or make such other orders as are necessary, Rule 23(d).

To similar effect are Fischer v. Kletz, *supra,* and Seigel v. Realty Equities Corp., *supra.* Accordingly, we reserve the power, if it develops from discovery that two distinct classes ought to be formed, to divide the class into two subclasses. If at that point it appears that plaintiff is not a proper representative of the after-offering class, and no other suitable representative has been found, the action as to that class may then have to be dismissed.

Although we make a class action determination at this juncture, we find that it would be premature to send notices. That event should abide further discovery. Accordingly, at a later date we will order such notice to the class members as will fulfill the requirements of F.R.Civ.P. 23(c)(2). *See* Wolfson v. Solomon, *supra,* where a similar procedure was followed.

In accordance with the foregoing opinion, we enter the following order.

### ORDER

And now, this 19th day of June 1973, it is ordered that this action may be maintained, pursuant to F.R.Civ.P. 23(c)(1) and Local Rule 45, as a class action on behalf of all persons who purchased shares of Aldon Industries, Inc. between February 13, 1969, and February 1, 1970.