See also, 333 F.Supp. 1049.

**James M. RICHARDSON, Plaintiff,**

**Owen M. Johnson, Jr., Intervening Plaintiff,**

**v.**

**HAMILTON INTERNATIONAL CORPORATION et al., Defendants.**

**Civ. A. No. 71–699.**

United States District Court,
E. D. Pennsylvania.

March 8, 1974.

David Berger, Philadelphia, Pa., for plaintiff.

James J. Binns, Philadelphia, Pa., for intervening plaintiff.

Edward W. Mullinix, Schnader, Harrison, Segal & Lewis, Matthew J. Broderick, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VANARTSDALEN, District Judge.

On June 11, 1969, the shareholders of Hamilton Life Insurance Co. of America (Hamilton Life), approved the merger of Hamilton Life as a wholly-owned subsidiary with Hamilton International Corporation (Hamilton International), its holding company. The merger was consummated on August 15, 1969. Prior to the merger, in May, 1969, a proxy statement containing facts and an explanation relevant to the merger was published by the Board of Directors of Hamilton Life and distributed to its shareholders with a recommendation by the Board to approve the merger. The accounting firm of Lybrand, Ross Brothers & Montgomery (Lybrand) audited the financial statements contained therein. Within the framework of this skeletal outline has developed a complicated securities violation lawsuit infested with thorny legal questions.

Intervening plaintiff, Owen M. Johnson, Jr., alleges in his class action complaint that the individual and corporate defendants failed to disclose material facts and misrepresented other facts in the proxy statement disseminated to Hamilton Life shareholders, thereby violating § 10(b) and § 14(a) of the Securities Exchange Act, Rules §§ 10b–5 and 14a–9 of the Securities and Exchange Commission (SEC), and by way of pendent jurisdiction, § 13(5) of Michigan's General Corporation Act. Johnson contends that the omissions and misstatements in the proxy statement misled and deceived the Hamilton Life shareholders into approving the merger between Hamilton Life and Hamilton International to the detriment of the shareholders and the benefit of the individual defendants and Hamilton International. It is Johnson's contention that Hamilton International and individual defendants,

who are directors or officers of Hamilton Life and/or International, engaged in various manipulative and fraudulent practices to increase their voting control and ownership of Hamilton Life and to divert assets of Hamilton Life to their personal use and benefit, all of which was unknown to plaintiff shareholders and was undisclosed in the Director's proxy statement. In addition to monetary damages, the complaint requests rescission of the merger and an accounting by the individual defendants.

Plaintiff, James M. Richardson, asserts a claim for damages solely against Lybrand for its certification of alleged false and misleading financial statements found in the proxy statement. Richardson argues that Lybrand violated sections 10(b) and 14(a) of the Securities Exchange Act, Rules 10b–5 and 14a–9 of the SEC and was negligent in certifying the financial statements which allegedly failed to explain, *inter alia*, the full circumstances and facts concerning inside transactions, stock issuances and payment of attorney's fees between and among individual defendants and Hamilton International and Hamilton Life. Intervening plaintiff, Owen M. Johnson, Jr., likewise seeks recovery against Lybrand on similar grounds.

A short journey through the history of the case would facilitate a better understanding of the issue under consideration, *viz.*, class action determination.

Richardson had originally instituted a class action complaint against Hamilton Life, Hamilton International, their various officers and directors, and Lybrand. Three or four years before the Hamilton merger, Richardson, an attorney practicing in Philadelphia, had represented Hamilton Life in a legal capacity and had had access to information which might have been related to the subject matter of his complaint against Hamilton Life and Hamilton International. For the sake of preserving the sanctity and confidence of the attorney-client relationship Richardson was disqualified from maintaining an action against the Hamilton corporations and their officers and directors in an opinion filed on November 3, 1971 and reported at 333 F. Supp. 1049 (E.D.Pa.1971). However, Richardson's complaint did state a separate cause of action against Lybrand, and as such, Hamilton was not an indispensable party. Since Richardson had never represented Lybrand, he was not disqualified from proceeding against the accounting firm.

Richardson appealed his disqualification to the Third Circuit Court of Appeals on December 24, 1971. Further proceedings in the case before the district court were delayed pending appellate review. The Third Circuit affirmed the district court's decision on November 17, 1972 as reported at 469 F.2d 1382 (3d Cir. 1972). The Supreme Court denied certiorari on May 14, 1973, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973).

On December 4, 1972, Johnson filed a motion to intervene against all defendants which was opposed by all defendants. The motion was granted on February 16, 1973 in effect substituting Johnson for Richardson as champion of the class action complaint against all defendants. Hamilton Life then filed a motion to sever, which was opposed by Richardson, Johnson and Lybrand. The motion was denied on June 8, 1973. At the same time, Johnson and Richardson were permitted to amend their complaints and a briefing schedule for class action motions was established. For decision therefore are the present contested class action certification motions of both Johnson and Richardson.

Intervening plaintiff Johnson seeks to represent a class composed of "all persons, other than the defendant, who purchased or sold shares of common stock in Alexander Hamilton Life Insurance Company of America ('Hamilton Life') during the period from May 19, 1969

through August 15, 1969." [1] A subclass is also proposed consisting of all owners, excluding defendants, of Hamilton Life stock which was converted into Hamilton International stock upon the merger of the two corporations on August 15, 1969. Certification is sought under all subsections of rule 23(b).

The Hamilton defendants oppose class certification on several grounds. At the outset, they attack the heart of the plaintiff's class action motion alleging that Johnson neither bought nor sold Hamilton Life stock during the period in question and therefore fails to qualify as a member of the proposed class. The Hamilton defendants also argue that Johnson was aware of the alleged stock manipulations, was not a victim of the alleged fraud, and did not rely on the proxy statement. As such, Johnson allegedly fails the rule 23(a)(3) test that a representative's claims must be typical of the class. The issue of reliance on the proxy statement, which defendants argue must be proved for each individual class member, likewise allegedly negates the presence of predominant common questions of fact or law required by rule 23(b)(3). The Hamilton defendants further contend that Johnson is guilty of laches and barred from seeking equitable relief under rule 23(b)(2) because plaintiff not only knew of the alleged fraud but slept on his rights from May 1969 until December 1972. Laches also allegedly prevents Johnson from satisfying the rule 23(a)(4) prerequisite that a representative party must fairly and adequately protect the interests of the class. The class itself, by including both buyers and sellers of Hamilton Life stock, is challenged as being overbroad and containing antagonistic and conflicting interests.

Lybrand's opposition to Johnson's class action motion is essentially similar to Hamiltons' except for an additional challenge to plaintiff's ability to adequately represent the class. Lybrand's written brief appears to question the competency of retained counsel to vigorously pursue the action. At oral argument, Lybrand clarified its position: It does not challenge retained counsel's legal ability and competency to prosecute the action. Rather, Lybrand has expressed concern that Johnson, himself an attorney, will in effect be both witness and attorney in the action to the detriment of other class members and in violation of the rule 23(a)(4) prerequisite.

■ To qualify for class action certification, Johnson must satisfy all the prerequisites of rule 23(a) and at least one subsection of rule 23(b).[2]

---

[1]. Intervening plaintiff's motion for certification as a class action.

[2]. Fed.R.Civ.P. 23 provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

■ ■ Hamiltons' argument that Johnson is not a member of the proposed class because he did not buy any Hamilton Life stock during the period in question cannot succeed. In discussing the "purchase" and "sale" requirements of a 10(b) action,[3] the Supreme Court in S.E.C. v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668, (1969), explained:

> Whatever the terms "purchase" and "sale" may mean in other contexts, here an alleged deception has affected individual shareholders' decisions in a way not at all unlike that involved in a typical cash sale or share exchange. The broad anti-fraud purposes of the statute and the rule would clearly be furthered by their application to this type of situation. Therefore we conclude that Producers' shareholders "purchased" shares in the new company by exchanging them for their old stock. (footnote omitted).

*Id.* at 467, 89 S.Ct. at 572. This District has consistently ruled that a transfer of shares of stock as a part of a merger constitutes a sale and purchase of stock within the meaning of a 10(b) action under the Securities Exchange Act. Entin v. Barg, 60 F.R.D. 108 (E. D.Pa.1973); In Re Penn Central Securities Litigation, 347 F.Supp. 1327 (E.D. Pa.1972), modified, 357 F.Supp. 869 (E.D.Pa.1973); Kohn v. American Metal Climax, Inc., 322 F.Supp. 1331 (E.D. Pa.1970), modified, 458 F.2d 255 (3d Cir.), cert. denied, 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972); Colonial Realty Corp. v. Baldwin-Montrose Chemical Co., 312 F.Supp. 1296 (E.D.Pa. 1970). Since there is no longer any question that an exchange of stock pursuant to a merger qualifies as a purchase for purposes of a 10(b) action, it would appear inconsistent to permit an individual action to proceed but disallow a class action on the identical complaint. The additional considerations mandated by a class action motion do not affect this point of law. See discussion *infra* at 423 on Richardson's qualifications as class representative. Johnson seeks class representation for those buying and selling stock during the time between May 19, 1969 and August 15, 1969. Although the proposed class does not divide sellers into "actual" and "technical" (caused by the merger), the use of the broader term "sellers" is sufficient in the context of this nondisclosure case to include both categories of sellers. In any event, the class action motion seeks a subclass on behalf of those individuals whose stock was converted as a result of the merger and Johnson can clearly represent this class. If a conflict later develops, an appropriate subclass can be established.

■ ■ Hamiltons' position that Johnson's claims are not typical of the claims of the class and that he is not an adequate class representative because he did not rely on the proxy statement is equal-

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

3. Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, provides:

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

ly erroneous. In Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Supreme Court definitively held that a nondisclosure case under 10b–5 did not require positive proof of reliance as a necessary element of plaintiff's case. It held at 153–154, 92 S.Ct. at 1472:

Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 384, [90 S.Ct. 616, 624, 24 L.Ed.2d 593] (1970); SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (CA2 1968), cert. denied sub nom. Coates v. SEC, 394 U.S. 976, [89 S.Ct. 1454, 22 L.Ed. 2d 756] (1969); 6 L. Loss, Securities Regulation 3876–3880 (1969 Supp. to 2d ed of Vol. 3); A. Bromberg, Securities Law, Fraud—SEC Rule 10b–5, §§ 2.6 and 8.6 (1967).

*Accord:* Dorfman v. First Boston Corp., 62 F.R.D. 466 (E.D.Pa.1973); Entin v. Barg, *supra*; Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 353 F. Supp. 264 (S.D.N.Y.1972). Notwithstanding *Affiliated Ute Citizens,* there was still some question, particularly raised by Judge Becker in Entin v. Barg, *supra,* as to "how reliance is to be treated in a 10b–5 class action nondisclosure case." *Id.,* 60 F.R.D. at 112. The Third Circuit has recently answered that question in Rochez Bros., Inc. v. Rhoades, 491 F.2d 402 (3d Cir. filed December 21, 1973), rehearing denied (3d Cir. filed January 29, 1974). The Court held that nonreliance may bar recovery, but the burden of proof "in light of the Supreme Court's holding in *Affiliated Ute,* . . . rests squarely upon *defendant* to establish the 'nonreliance' " (emphasis supplied), and not upon the plaintiff. *Id.* at 410. Johnson's complaint falls four square within the nondisclosure rule enunciated in *Affiliated Ute Citizens.* To the extent that nondisclosure is an affirmative defense, any consideration of the issue on class action certification would be an improper intrusion into the merits of the case. Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir.), cert. denied sub nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *In Re Penn Securities Litigation, supra,* and the cases cited therein.

■ Laches allegedly acts as a double obstacle preventing class certification by not only undermining Johnson's ability to adequately represent the class under rule 23(a)(4) but also barring any equitable relief under rule 23(b)(2). But consideration of laches on a class action motion runs counter to the teachings of the often and immediately above cited case of Kahan v. Rosenstiel, *supra.* While the burden of proof may vary, Muscianese v. United States Steel Corp., 354 F.Supp. 1394 (E.D.Pa.1973), laches is an issue relevant to the merits of the case and improper to consider at this juncture. As stated in Lamb v. United Security Life Co., 59 F.R.D. 25 at 35 (S.D.Iowa, 1972):

[T]he Court has no intention, in making a Rule 23 determination, of adjudicating whether certain representatives of the class have a cause of action, or a possibility of prevailing on the merits, or whether they are barred by the *statute of limitations,* by a weakness in their case, or for any other reason. To do so would, first of all, completely subvert the requirements and standards set forth for motions to dismiss and motions for summary judgment under F.R.C.P. Rules 12 and 56, as well as those of Rule 23 itself by importing the requirements of F.R.C.P. Rule 65 (preliminary injunctions) thereinto. Rule 23 simply does not call for the sort of inquiry that defendants suggest. . . .

\*   \*   \*   \*   \*   \*

Additionally, making an inquiry into the merits at this juncture would be invasive of plaintiffs' jury trial right, and would mean that there could never be a class action until major portions of the claim were adjudicated, in derogation of the requirement of Rule 23(c)(1) that the class action determination be made "as soon as practicable after the commencement of an action", . . . thus completely negating all of the economies that class actions were designed to achieve . . . . (emphasis added) (citations omitted).

If an inquiry into the statute of limitations is prohibited during class action determination, consideration of laches, *a fortiori*, should be avoided. Indeed, consideration of laches would amount to an even greater intrusion into the merits of the case since it, "although similar to limitations, involves more than the mere lapse of time and depends largely upon questions of fact." 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1277 (1969) at 338.

■ Lybrand's fears that Johnson will act as both attorney and witness in this action should be assuaged by the vigorous and convincing representations of Johnson's attorney in his written brief and at oral argument that he, notwithstanding possible aid from Johnson, will be litigating the action. There is no doubt that plaintiff's counsel possesses the required competence and experience to more than adequately represent plaintiff and his fellow class members. There is also no doubt that plaintiff's counsel will present the other issues of this case with the same vigor and cogency that he has presented his qualifications and ability to litigate this action.

Kahan v. Rosenstiel, supra, permitted a nonseller of stock in a § 10(b) suit to represent a class composed of both nonsellers and sellers. This should dispose of defendants' contention that Johnson's proposed class is overbroad and contains conflicting and antagonistic interests. The buyers, sellers, and "technical sellers", all allege a common securities violation claim emanating from the allegedly false proxy statement. If it develops at a later point that the measure of damages may vary among the different groups, subclasses may be established pursuant to rule 23(c)(4)(B).

All prerequisites of rule 23(a) are satisfied.

There is no risk that varying adjudications would establish incompatible standards of conduct for defendants so that certification under rule 23(b)(1)(A) must be denied. See discussion in Bogosian v. Gulf Oil Corp., 62 F.R.D. 124, at 131, 132 (E.D.Pa. 1973). Both Hamilton and Lybrand oppose a rule 23(b)(1)(B) class certification. They argue that a favorable defense judgment would not be dispositive of the interests of the other members of the class. I disagree.

■ ■ It is true that the possible *stare decisis* effects of a verdict or judgment is insufficient to invoke the provisions of rule 23(b)(1)(B). Alsup v. Montgomery Ward & Co., 57 F.R.D. 89 (N.D.Cal.1972); Goldman v. First National Bank of Chicago, 56 F.R.D. 587 (N.D.Ill.1972). The Notes of the Advisory Committee on Rules indicate that certification is appropriate under rule 23(b)(1)(B) whenever rights in a common organization, fund, or contract is at stake and where one adjudication would, as a practical matter, conclude the rights of all prospective class members. Rodriguez v. Family Publications Service, Inc., 57 F.R.D. 189 (C.D.Cal.1972). Examples given in the Note include, *inter alia*, an action by shareholders 'to compel the declaration of a dividend and the proper recognition and handling of redemption and pre-emption rights. Likewise an action by a corporation's debenture holders claiming a right of conversion was held to be an appropriate action under rule 23(b)(1)(B). Van Gemert v. Boeing Co., 259 F.Supp. 125

(S.D.N.Y.1966). As part of his relief, Johnson requests that the August 1969 merger between Hamilton Life and Hamilton International be rescinded. It would necessarily follow that a decision rescinding the merger would be conclusive of the rights of all other class members on this point. It is difficult to conceive how rescission of the merger could be decreed as to one shareholder without affecting all shareholders. The decision would be similar to the effect of a declaration of dividend and, as such, rule 23(b)(1)(B) class certification is appropriate.

■ The amended complaint requests monetary damages, an accounting by individual defendants, and a rescission of the merger. Class certification under rule 23(b)(2) is inappropriate if the action is predominantly for monetary damages. Advisory Committee's Note to the 1966 amendment to Rule 23; Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968). In light of my decision to certify the class under rule 23(b)(1)(B), *supra,* and rule 23(b)(3), *infra,* the primacy of the requested relief need not be decided.

■ Rule 23(b)(3) requires that questions of fact or law predominate over individual questions and the class action device be superior to other methods of adjudications. In opposing rule 23(b)(3) certification, Hamilton reiterates its argument that reliance is an issue individual to each class member and will predominate over any existing common question of law or fact. This argument has been rejected with respect to rule 23(a)(4) adequate representation and its shortcomings are equally applicable to the rule 23(b)(3) requirement. Individual questions as to reliance, as in the related issue of damages, will not defeat class certification under rule 23(b)(3). If needed, these issues can be separately tried. Green v. Wolf Corp., 406 F.2d 291 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L. Ed.2d 766 (1969); Entin v. Barg, *su-pra*; In Re Penn Central Securities Litigation, *supra;* Mersay v. First Republic Corp. of America, 43 F.R.D. 465 (S. D.N.Y.1968); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968).

■ The central and predominant question of this lawsuit is whether the proxy statement issued by the Hamilton Life Board of Directors on May 19, 1969 was false, misleading, and failed to disclose material facts. Determination of the truthfulness of this single written document will comprise the heart of the litigation. Chief Judge Lord, in holding that reliance in a nondisclosure case did not present a predominant individual issue, stated:

> Reliance was long an especially troublesome problem in securities class actions. However, whatever problems may have existed have been answered by UTE CITIZENS. If individual plaintiffs need no longer prove actual reliance, there can be no reason for denying class action status because of variations in individual reliance. (footnote omitted).

Dorfman v. First Boston Corp., *supra,* 62 F.R.D. at 466. Rochez Bros., Inc. v. Rhoades, *supra,* does not alter the preceding.

Not only do common questions of fact and law predominate but the class action is superior to other available methods of adjudication. In short, this case is a typical nondisclosure proxy fraud case, tailor-made for class certification. As stated in Mader v. Armel, 402 F.2d 158 (6th Cir. 1968), cert. denied, sub nom. Young v. Mader, 394 U.S. 930, 89 S.Ct. 1188, 22 L.Ed.2d 459 (1969):

> This is not a case where some shareholders were treated differently. Proxy statements alleged to contain misrepresentations and material omissions were mailed to all shareholders. Questions of fact and law are therefore common to all of them. Using the language of the court in *Vine* [Vine v. Beneficial Finance Co., 374

F.2d 627 (2 Cir.)], supra, it is a classic example of deception of an entire class, id. 374 F.2d at 635.

*Id.* at 161.

Richardson's proposed class action presents a perplexing problem. Because of his disqualification to proceed against the Hamilton defendants, Richardson asserts an action only against Lybrand for certifying alleged false financial statements appearing in Hamilton Life's May 19, 1969 proxy. He seeks to represent a class under rule 23(b)(3) seeking damages from Lybrand by all owners of Hamilton International stock as a result of the August 15, 1969 merger. Lybrand opposes class certification claiming that Richardson's claims are not typical of the class since he is attacking the accuracy of only a portion of the proxy and not the whole stateemnt; that Richardson cannot adequately represent the class because his disqualification as to the Hamilton defendants will prevent him from vigorously litigating the action; and that the existence of two separate class actions with their respective representatives, Johnson and Richardson, representing the same class is not a superior method of adjudication.

The 1966 amendment to Rule 23 imposes a heavy burden of adequate representation upon the class standard bearer and his attorney. Judge Medina summarized the critical importance of this requirement in Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d at 562:

Traditionally, courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of absent class members. See Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Of course, understandably, the standards for representation under the old spurious class action were not as rigorously enforced, due to the minimal *res judicata* effects given to the judgments in these suits. See Oppenhei-

mer v. F. J. Young & Co., 144 F.2d 387 (2d Cir. 1944). However, as a result of the sweeping changes in Rule 23, a court must now carefully scrutinize the adequacy of representation in all class actions.

Judge Medina elaborated on the elements needed to qualify as an adequate class representative:

What are the ingredients that enable one to be termed "an adequate representative of the class?" To be sure, an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and *generally able* to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class. (citations omitted) (emphasis added).

*Id.* The ultimate requirement appears to be the ability of the representative party and his attorney to assert the rights of the other class members with the utmost vigor and forthrightness. Mersay v. First Republic Corporation of America, *supra*.

Richardson's disqualification from proceeding against the Hamilton defendants erects an insurmountable obstacle which prevents him from adequately representing the class. An examination of Richardson's complaint demonstrates that an essential element of his action will be proof that the financial statements that Lybrand certified were false. Indeed, the amended complaints of Richardson and Johnson are identical in many important respects. Richardson disagrees, arguing that the theories of liability and respective defenses in his action against Lybrand are separate and distinct from Johnson's action. But one of the keystone issues of Richardson's action, regardless of the theory of Lybrand's liability or its defense, is the establishment

that the financial statements were false.[4] This, in turn, will require inquiry into the alleged deceptive activities of the Hamilton defendants. Because the Hamilton defendants may object to any disclosure by Richardson that in any way arose out of the former attorney-client relationship, Richardson would probably be thwarted or seriously impeded in any efforts to establish the falseness in fact of the financial statements.

Richardson's disqualification interjects a structural weakness in his case inimical to adequate class representation. Paradoxically, Richardson is represented by extremely able, prominent, and esteemed counsel who would unquestionably pursue the action with all the vigor and forthrightness ethically permissible. By being forced to litigate under the restrictions imposed by Richardson's disqualification to proceed against the Hamiltons, counsel will be severely handicapped in pursuing the case against Lybrand on behalf of the proposed class. Richardson's disqualification presents a burden that may not be imposed on other proposed class members by recognizing Richardson as the class representative.

Richardson is in no way precluded from proceeding individually against Lybrand. However, class certification presents a myriad of considerations beyond whether the Hamilton corporations are indispensable parties to Richardson's action. In light of Richardson's disqualification and his inability to execute the representative responsibility owed to other class members, it would be ill-fitting to certify a class action on his behalf. The class is not left without a champion; Johnson has joined Lybrand and will be permitted to represent the class asserting claims against the accounting firm and the other named defendants, whereby all issues will be heard together.

The action will be certified under rule 23(b)(1) and (3). However, rule 23(b)(3) certification is appropriate only as to the issue of damages. Multiplicity of suits and impairment of the interests of other class members will be avoided as to the heart of the controversy, liability, but class members will be allowed to opt-out as to damages. *Cf.* Zachary v. Chase Manhattan Bank, 52 F.R.D. 532 (S.D.N.Y.1971); Mungin v. Florida East Coast Ry., 318 F.Supp. 720 (M.D.Fla.1970); *Van Gemert, supra.* Defendants will be required to compile and submit from corporate records a list of those individuals who bought or sold or were record owners of stock in Hamilton Life between May 19, 1969 and August 15, 1969. Notices will be sent to all class members at Johnson's expense. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973). The parties shall file within twenty days recommendations as to the contents and methods of notice.

---

4. This observation is made well aware of the prohibition against considering the merits of the case. Kahan v. Rosenstiel, *supra.* However, this does not prevent the court from identifying the issues that will be presented at trial to decide the appropriateness of a class action, particularly to determine the presence of predominant individual or common issues. Bogosian v. Gulf Oil Corp., *supra;* Abercrombie v. Lum's, Inc., D.C., 345 F.Supp. 387. Likewise, it should be proper to identify the issues if, as in the unique circumstances of this instant action, those issues will affect the ability of plaintiff to adequately represent the class.