**Clyde H. CUTNER, Individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**Albert FRIED, Jr., et al., Defendants.**

**No. 73 Civ. 227–LFM.**

United States District Court,
S. D. New York.

March 13, 1974.

**6**

Milberg & Weiss, New York City, Harold E. Kohn, P.A., Philadelphia, Pa., for plaintiff; Melvyn I. Weiss and Jared Specthrie, New York City, Aaron M. Fine, Stuart H. Savett, and Arthur M. Kaplan, Philadelphia, Pa., of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant The New York Stock Exchange, Inc.; William E. Jackson and Briscoe R. Smith, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants Albert Fried, Jr. and Albert Fried & Co.; George J. Grumbach, Jr., New York City, of counsel.

MacMAHON, District Judge.

Plaintiff moves under Rule 23(c)(1), Fed.R.Civ.P., and Civil Rule 11A of this court for a determination that this action is a class action. Defendants cross-move under Rule 12(b), Fed.R. Civ.P., to dismiss Counts IV and V of the complaint for failure to state a claim.

This action is brought under §§ 10(b) and 11(b) of the Securities Exchange Act of 1934 ("the Act")[1] and Rules 10b–5 and 11b–1 of the Securities and Exchange Commission.[2]

---

1. 15 U.S.C. §§ 78j(b) and 78k(b).

2. 17 C.F.R. §§ 240.10(b)–5 and 240.11(b)–1.

Count IV of the complaint, which defendants challenge as insufficient, alleges the defendant New York Stock Exchange ("Exchange") "failed and refused to establish adequate rules in its governance of specialists as mandated by Rule 11(b)–1(a)(2)." Count V, also challenged by defendants, alleges that defendants' conduct, including the aforementioned alleged violation of Rule 11 and § 11 of the Act, constitutes negligence.

Plaintiff, a stockholder of Skyline Corporation ("Skyline"), claims that defendant Albert Fried, Jr., a registered specialist in Skyline stock, wrongfully suspended trading in the stock on December 22, 1972. Plaintiff contends that the Exchange is liable for damages allegedly caused by the suspension because it failed to establish adequate rules governing specialists.[3] Plaintiff also seeks injunctive relief directing the promulgation of new rules governing specialists.

Defendants contend that Counts IV and V should be dismissed because § 11 of the Act does not confer a private right of action upon a person wronged by its violation. They argue that, even if a private right of action for damages does exist, it would be an improper exercise of our equity powers to direct that new regulations be promulgated.

Section 11(b) of the Act provides that, except when in contravention of SEC rules and regulations, "the rules of a national securities exchange may permit . . . a member to be registered as a specialist." SEC Rule 11b–1 specifically authorizes a national securities exchange to promulgate rules authorizing a member to act as a specialist.

■ There can be no question that the rules promulgated by the SEC, pursuant to § 11 of the Act, place a duty upon the Exchange to make adequate rules governing specialists.[4] Whether that duty may be enforced by a private party, however, is another question. Thus, we must determine whether the statutory scheme for regulation of specialists permits this court to decide if the Exchange' has violated its duty to make adequate rules and whether plaintiff may seek legal or equitable relief for a violation of that duty.

Section 11(b) of the Act does not provide for a private right of action by its express terms, but private rights of action have been recognized under other sections of the Act which likewise do not expressly grant them.[5]

3. A specialist is a person authorized by a national stock exchange, pursuant to § 11(b) of the Securities Exchange Act of 1934 and Rule 11b–1 of the Securities and Exchange Commission, to perform two basic functions with respect to his speciality stock. As a broker, he executes orders to buy or sell, which are forwarded to him by other exchange members, and he receives part of the total commission paid by the customer. As a dealer, he is permitted to buy or sell for his own account for the purpose of providing reasonable price continuity from transaction to transaction. Thus, by evening out temporary disparities between public supply and demand, the specialist maintains a fair and orderly market in his specialty stock.

4. Rule 11b–1 of the Securities and Exchange Commission, 17 C.F.R. § 240.11b–1(a)(2), provides:

"The rules of a national securities exchange permitting a member of such exchange to register as a specialist and to act as a dealer shall include:

\* \* \* \* \*

(ii) Requirements, as a condition of a specialist's registration, that a specialist engage in a course of dealings for his own account to assist in the maintenance, so far as practicable, of a fair and orderly market, and that a finding by the exchange of any substantial or continued failure by a specialist to engage in such course of dealings will result in the suspension or cancellation of such specialist's registration in one or more of the securities in which such specialist is registered;

(iii) Provisions restricting his dealings so far as practicable to those reasonably necessary to permit him to maintain a fair and orderly market . . .;

(iv) Provisions stating the responsibilities of a specialist acting as a broker in stocks in which he is registered; and

(v) Procedures to provide for the effective and systematic surveillance of the activities of specialists."

5. *E. g.*, §§ 10(b), 12(a) and 14(a).

Plaintiff contends that Weinberger v. New York Stock Exchange, 335 F.Supp. 139 (S.D.N.Y.1971), permitting a private right of action under § 6 of the Act,[6] should be extended to permit a private claim under § 11. We disagree.

In *Weinberger,* plaintiff sued as a third-party beneficiary of an agreement between the Exchange and the SEC which had been filed with the SEC in 1934 pursuant to § 6 of the Act, under which the Exchange agreed to comply with the Act and its rules and to enforce compliance by its members. The complaint alleged that the Exchange had violated § 6 by failing to promulgate or enforce rules properly regulating members and thereby had breached its contract with the SEC. The *Weinberger* court held that the agreement between the Exchange and the SEC was made for the benefit of investors and that, therefore, an investor had a private right of action for its breach as a third-party beneficiary.

Here, however, plaintiff does not allege a breach of contract. Rather, Count IV alleges that the Exchange "failed and refused to establish adequate rules in its governance of Specialists as mandated by Rule 11b–1(a)(2)." All that is alleged, therefore, is a direct violation of Rule 11b–1(a)(2) and the Act (since the Rule is promulgated under the Act), a situation clearly distinguishable from *Weinberger.*

Plaintiff also contends that he has a private right of action under the rule of Baird v. Franklin, 141 F.2d 238 (2d Cir.), cert. denied, 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944). *Baird* permits a private right of action for violation by the Exchange of its statutory duty to enforce its rules regulating member firms, as required by § 6, because the congressional intent underlying the Act was to protect investors. Unlike *Baird,* however, there is no allegation here that the Exchange failed to enforce its rules.

■ While we have no doubt that § 11(b), like § 6, was enacted for the protection of the investing public, it does not follow that a rule made by the Exchange under the regulatory eye of the SEC is open to question in the courts. Plainly, determination of whether a rule governing specialists on the Exchange is adequate or inadequate raises issues calling for the exercise of judgmental factors which are within the special competence of the SEC and outside the conventional experience of judges and juries.[7] Precisely because the SEC possesses expert and specialized knowledge in this field, congress expressly placed the responsibility for resolution of such issues under this comprehensive regulatory scheme on the SEC, not on the courts.

■ Thus, § 19(b) of the Act empowers the SEC to request an exchange to make changes in its rules and to disapprove any rules adopted by an exchange which it does not deem adequate.[8] The SEC also possesses the power "by rules or regulations or by order to alter or supplement the rules of such exchange. . . ."[9]

Pursuant to its powers under §§ 19(b) and 11(b), the SEC has promulgated Rule 11b–1(a)(3), which provides that the SEC may disapprove any change in or addition to any exchange rule governing specialists "if the Commission finds that it is inadequate . . . or is inconsistent with the public interest or the protection of investors."[10]

---

6. 15 U.S.C. § 78f.

7. Professor Loss, in his treatise on Securities Regulation (2d ed. 1961), reported that the conduct of specialists was "[a]n aspect of exchange trading which gave Congress considerable concern—and whose regulation it left almost entirely to the discretion of the Commission. . . ." Volume II at 1201.

8. 15 U.S.C. § 78s(b); Silver v. New York Stock Exchange, 373 U.S. 341, 357, 83 S.Ct. 1246, 10 L.Ed.2d 389, rehearing denied, 375 U.S. 870, 84 S.Ct. 26, 11 L.Ed.2d 99 (1963).

9. 15 U.S.C. § 78s(b).

10. 17 C.F.R. § 240.11b–1(a)(3).

We think any attempt by this court to determine the adequacy of the Exchange's rules governing specialists would interfere with the SEC's obvious regulatory and rule-making power in this area. Moreover, if we were to attempt to substitute our judgment for that of the SEC, the probability of inconsistent rulings as to the adequacy of Exchange rules would be very great, thus creating havoc in the regulatory scheme designed by congress.[11] The question of adequacy here, like the question of reasonable rates for utilities, is to be answered not by the courts but by the appropriate administrative agency.[12]

In Kroese v. New York Stock Exchange, 227 F.Supp. 519 (S.D.N.Y.1964), where a similar situation faced the court, plaintiff claimed that an Exchange rule required the defendant corporation to hold regular meetings. The *Kroese* court found, however, that the rule respecting corporate meetings did not in fact require regular meetings and observed that it was not the function of the court to change the rule.

"It might be desirable for the Stock Exchange to amend its rule to require meetings of shareholders or holders of the trust certificates of actively operating business trusts at regular intervals. *This, however, is not a matter which can be required by the Court. The remedy there would lie in Section 19(b) of the Act which authorizes the SEC to supplement the rules of the Exchange.*"[13]

■ It is not the function of this court to usurp the regulatory or rule-making power of the SEC and, in the guise of granting legal or equitable relief, promulgate rules for the governance of specialists. We hold, therefore, that a private right of action does not lie for the purpose of challenging the adequacy of Exchange rules promulgated under the command of § 11(b). Therefore, Count IV of the complaint must be dismissed.

Defendants also move to dismiss, in part; Count V of the complaint for insufficiency. Count V asserts a two-pronged claim for negligence, alleging that (1) defendants negligently suspended and resumed trading in Skyline stock and (2) defendant Exchange negligently failed and refused to adopt adequate rules governing specialists. Defendants challenge only the second of these claims, contending that § 11(b) does not give rise to a private right of action for negligence in failing to adopt adequate rules governing specialists.

■ Since we have held that a violation of § 11(b) does not give rise to a private right of action, it follows that a negligent failure to adopt adequate rules cannot expose the Exchange to liability in negligence. The claim for relief in

11. Stark v. New York Stock Exchange, 346 F.Supp. 217, 228 (S.D.N.Y.1972).

12. "But much of the substance of administrative adjudication is, or at the crucial time has been thought to be, outside the area of judicial competence. Courts are not qualified to fix rates or to determine what practices related to rates are to be preferred. Even a simple process of granting or denying licenses, on the basis of a record of evidence, has been held so far beyond the competence of courts that a statute requiring courts to perform this task is held unconstitutional. Judges rather obviously cannot furnish the skills in law, accounting, and engineering supplied by the staff of a relatively simple agency like the FCC, to say nothing of a more complex agency like the ICC, which requires the assistance of rate men, locomotive inspectors, railroad reorganization specialists, explosives experts, valuation engineers, tariff interpreters, accountants, specialists in long-and-short-haul problems, and experts on problems of rail traffic congestion. With all the specialized personnel available on the Commission's staff, it would be odd, even when specific issues are fully crystallized, to transfer a case to a court made up of judges who are not expected to have the needed specialized experience and who are not advised by specialists." 1 K.C. Davis, Administrative Law (1958), § 1.05 at 38.
See, Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 251, 71 S.Ct. 692, 95 L.Ed. 912 (1951).

13. Kroese v. New York Stock Exchange, 227 F.Supp. 519, 521 (S.D.N.Y.1964) (emphasis added).

Count IV, which we have held insufficient, is not magically validated by grounding it in negligence rather than on an alleged violation of § 11(b) for the gravamen of the wrong remains an alleged failure to promulgate adequate rules. Therefore, defendant Exchange's motion to dismiss that part of Count V of the complaint, which asserts a claim against it for negligently failing to promulgate adequate rules, must also be granted.

■ Plaintiff moves for an order, pursuant to Rule 23(c)(1), Fed.R.Civ.P., and Civil Rule 11A of this court, declaring that this action may be maintained as a class action. We need not now make any determination concerning the substantive factual issues. The complaint is not frivolous and plaintiff, therefore, has met the minimum requirement.[14]

Plaintiff, Clyde H. Cutner, alleges that on December 22, 1972, he was the beneficial owner of 4,100 shares and the record owner of 3,400 shares of Skyline stock, which was traded on the Exchange as well as on other stock exchanges and over the counter. His claims arise out of the suspension of trading in Skyline stock by defendant Albert Fried, Jr., a partner in defendant Albert Fried & Co. and the registered specialist in Skyline stock. It is asserted that shortly after Noon on December 22, 1972, a report of Skyline's second quarter earnings was published on the Dow Jones tape. The report showed that earnings per share were down from the previous year's second quarter.[15] Soon thereafter, defendant Fried, having consulted with Exchange officials, stopped all trading in Skyline shares.

Defendant Fried and Exchange officials decided not to resume trading on December 22, 1972 but to wait until after the Christmas weekend. Accordingly,

trading in Skyline was resumed on the next business day, Tuesday, December 26, 1972, but not at the regular hour, for defendants believed that further public dissemination of the earnings report was advisable to help maintain a fair and orderly market. Trading was not resumed, therefore, until about 1:00 P.M. on December 26, 1972, after having been suspended for a total of six and one-half business hours. The opening trade was at $34 per share, and, thereafter, the price steadily declined.

Plaintiff contends, in the first three counts of his complaint, that (1) the suspension of trading was unjustified and in violation of duties imposed by § 10(b) of the Act and the rules promulgated thereunder; (2) defendants engaged in acts of fraud and misrepresentation and conspiracy to do so, in violation of § 10(b) of the Act and the rules promulgated thereunder; (3) defendants perpetrated a fraud first by halting and later resuming trading at a lower price; (4) the actions of defendants had the effect of wrongfully pegging or fixing the price of Skyline shares at lower than market value, in violation of § 10(b), and (5) defendants' actions violated Rule 104 of the Exchange which required defendants, as specialists, to maintain a fair and orderly market and to minimize the effects of temporary disparities between supply and demand.

Plaintiff claims that the facts alleged caused him and members of the putative class to suffer damages because they were forced to sell Skyline shares at a depressed price, borrow money at interest or draw on income-producing accounts and investments in order to maintain margin or maintenance accounts. Plaintiff asserts that the putative class consists of approximately 11,000 members and that it is made up of

14. Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir.), cert. granted, 414 U.S. 908, 94 S.Ct. 235, 38 L.Ed.2d 146 (1973); Miller v. Mackey Int'l, 452 F.2d 424 (5th Cir. 1971); Katz v. Carte Blanche Corp., 52 F. R.D. 510 (W.D.Pa.1971); 3B J. Moore,

Federal Practice ¶ 23.45[3], at 23–157 (2d ed. 1969).

15. This was the first decrease in Skyline's earnings on a quarterly comparative basis since 1969.

"all persons (including all individuals, firms, partnerships, corporations, and other entities), other than defendants, who owned shares in Skyline Corporation at 12:11 P.M., Friday, December 22, 1972, and who were adversely affected as a result of the wrongful conduct alleged in the Complaint."

Plaintiff also alleges that there is a subclass consisting of those who were damaged by the sale, or forced sale, of their Skyline stock at a depressed price, or who were required to borrow money at interest, or to take money from income-producing accounts and investments in order to retain Skyline stock held in margin or maintenance accounts. Plaintiff seeks certification of this subclass under Rule 23(c)(4), Fed.R.Civ.P., which provides that "a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."

All the members of the putative subclass are included in the definition of the putative main class. The provisions of Rule 23 provide for the certification of subclasses in the event of antagonism or conflict of interest between segments of the main class.[16] Here, there are no allegations of any antagonism or conflict of interest.

It seems clear, however, that trial of the causation and damages issues will be utterly unmanageable because of uncommon issues of fact unless the class, consisting of potentially 11,000 shareholders, is divided into subclasses, consisting of shareholders raising common issues of fact on the causation and damage issues. However, we leave that difficult problem for another day.

We see no necessity; therefore, for the creation of subclasses at this time. Consequently, we need only decide whether the putative main class meets the requirements enumerated in Rule 23.

The motion for class determination should be granted if all of the requirements of Rule 23 are met. We will now discuss the applicable standards.

First, it is clear that the number in the group here is so numerous that the joinder of all members is impracticable.[17] Plaintiff claims that the class contains over 11,000 members. Obviously, the joinder of that many parties is impracticable. Even if it should develop that the actual number is far less than 11,000, the numerosity requirement of Rule 23(a)(1) will be "easily met" if the class is larger than 2,000.[18] In fact, a class of 212 has been held sufficient to meet the test of Rule 23(a)(1) in a 10(b)–5 action.[19]

Second, it cannot be gainsaid that there are questions of law and fact common to the class.[20] Moreover, the questions common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other methods for the fair and efficient adjudication of the controversy.[21] There are far too many common questions to enumerate. Suffice it to say that they involve the suspension and resumption of trading and whether the facts alleged constitute violations of Rule 10b.

16. Northern Natural Gas Co. v. Grounds, 292 F.Supp. 619 (D.Kan.1968); 3B J. Moore, Federal Practice ¶ 23.65, at 23–1251 (2d ed. 1969).

17. Rule 23(a)(1), Fed.R.Civ.P.

18. Green v. Wolf Corp., 406 F.2d 291, 298 (2d Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

19. Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972).

Defendants claim that a class action cannot be maintained because much of the stock is held in street names and this, they say, would make it impossible for plaintiff to determine the names of the class members by searching Skyline's books, as plaintiff proposes. The argument has no bearing upon class determination but relates to the mechanics of notice to the class, if a class is certified.

20. Rule 23(a)(2), Fed.R.Civ.P.

21. Rule 23(b)(3), Fed.R.Civ.P.

Defendants claim that despite these common questions, the predominating questions affect only individual members. They point to the questions of damages and causation in support of this contention.

■ The issues of damages and causation are so closely related that they cannot be separated for purposes of analysis. Plaintiff contends, in essence, that defendants' alleged wrongful act artificially depressed the price of Skyline shares. Exactly what portion of the reduction in the selling price is directly attributable to the suspension of trading remains to be seen. Other factors influencing the market as a whole,[22] and Skyline stock in particular, must be identified and discounted from a calculation of a shareholder's damages. This is necessary to assure that a nexus exists between defendants' acts and plaintiff's loss.

Plaintiff's reliance on Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), for the proposition that causation need not be individually proved is misplaced. *Affiliated Ute* holds that positive proof of *reliance* is not essential in a *nondisclosure* case. The case at bar is not a nondisclosure case. Nor are we concerned with reliance. Rather, we are concerned with causation.[23] Plaintiff, therefore, must show a causal link between defendants' acts and the reduced trading price of Skyline stock. Indeed, each member of a determined class must likewise demonstrate this nexus between the alleged wrong and his loss, and this task will become increasingly difficult as the time of loss becomes more and more remote from the suspension of trading.

Defendants contend that these individual questions of damage to each class member predominate over common questions, dictating a denial of class action status. We disagree.

It is true that damages may differ for each member of the class, but our Court of Appeals has long recognized that, although it may place a great burden on a trial court, a separate determination of damage to individual class members may be necessary.[24] Judge Motley of this court has noted that a "class action may be maintained even though the measure of damages as to each member of the class may be different."[25] "[P]roof of . . . individual damages may effectively be severed and treated in subsequent proceedings."[26]

As noted earlier, it will probably be necessary to define and certify subclasses on the damage issue. In Brennan v. Midwestern Life Ins. Co., 286 F.Supp. 702 (N.D.Ind.1968), aff'd, 417 F.2d 147 (7th Cir. 1969), cert. denied, 397 U.S. 989, 90 S.Ct. 1122, 25 L.Ed.2d 397 (1970), for example, the court referred damage claims in a class action to a special master.

■ The denial of a class action status here would be likely to precipitate a multitude of actions by those claiming sufficient damages to render an action feasible, and in each of those actions both liability and damages would have to be determined. We think that the solution to the problem lies not in denial of class action status but in separate trials of the liability and damage issues.[27] A

---

22. For example, the court, in Feit v. Leasco Data Processing Equip. Corp., 332 F.Supp. 544, 586 (E.D.N.Y.1971), took "judicial notice of the very drastic general decline in the stock market in 1969."

23. Globus v. Law Research Serv., Inc., 418 F.2d 1276 (2d Cir. 1969), cert. denied 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); Cohen v. Franchard Corp., 478 F.2d 115, 124 n. 12 (2d Cir. 1973); Siegel v. Realty Equities Corp. of N. Y., 54 F.R.D. 420, 424-425 (S.D.N.Y.1972).

24. Green v. Wolf Corp., *supra*.

25. Herbst v. Able, 47 F.R.D. 11, 17 (S.D.N. Y.1969); see also, Advisory Committee Notes, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966).

26. 3B J. Moore, Federal Practice ¶ 23.-45[2] at 23-762 (2d ed. 1969).

27. Rule 41(b), Fed.R.Civ.P.; Cohen v. Franchard Corp., *supra*.

class action will determine liability [28] in a single trial leaving the issues of causality and damages for determination by a separate trial or such other procedure as the court and the parties deem appropriate. If class action status is denied, many members of the putative class will not have suffered enough damage to make a lawsuit economically practicable, and the wrongs they may have suffered would go unredressed. It follows that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." [29]

We next consider whether the claims of the representative parties are typical of the claims of the class.[30] This clause has been construed to mean simply that the representative party and the other members of the class have no interests adverse to each other.[31] We think there can be no question that the claims alleged here are typical of the claims of other Skyline shareholders, and there is no showing of any adverse or conflicting interest on the part of the representative plaintiff. This is sufficient to satisfy the "typical" requirement.[32]

We turn now to whether the representative party will fairly and adequately protect the interests of the class.[33]

"[A]n essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class." [34]

The attorneys for plaintiff appear as qualified as most to conduct this litigation. They have had experience in other class actions. Defendants claim, however, that plaintiff's demand for a jury trial indicates that the attorneys are not qualified. We disagree.

Juries are as well, and probably better, able to decide issues of fact than judges. This case is surely no more complex than hundreds of criminal cases commonly and frequently brought in this court under the Securities Acts and tried to juries. We have experienced many jury trials, both civil and criminal, involving alleged violations of the antifraud provisions of the Securities Act and, given competent counsel, see no reason whatever why such cases should not be tried to a jury. Moreover, to deny class certification on such grounds would pose serious constitutional questions.

There is no indication that the litigants are involved in a collusive suit or that plaintiff has any interests antagonistic to other class members. Therefore, all the conditions of Rule 23 having been satisfied, we have no reason to deny class certification.

Defendants correctly contend that only purchasers and sellers of securities have standing to sue under Rule 10(b)-5.[35] This would limit the class to those who held shares of Skyline at any time from 12:11 P.M. on December 22, 1972 until December 26, 1972, at 1:10 P.M., the time of the alleged wrongful acts, and who subsequently sold them at a loss. However, plaintiff also states a claim for alleged violation of Exchange Rule 104. Without expressing any opin-

---

**28.** *I. e.,* whether defendants have violated the Securities Act.

**29.** Rule 23(b)(3), Fed.R.Civ.P.

**30.** Rule 23(a)(3), Fed.R.Civ.P.

**31.** Mersay v. First Republic Corp. of America, 43 F.R.D. 465 (S.D.N.Y.1968).

**32.** Mersay v. First Republic Corp. of America, *supra.*

**33.** Rule 23(a)(4), Fed.R.Civ.P.

**34.** Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968).

**35.** Birnbaum v. Newport Steel Corp., 193 F. 2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

ion on the merits of the Rule 104 claim, we see no requirement that such claim be limited to purchasers and sellers. The question of the proper relief, if any, to be accorded to these shareholders is not before us at this time. That is a matter to be decided later. The class, however, must be inclusive of all these potentially successful plaintiffs. Therefore, the certified class consists of all those who held Skyline stock at any time between 12:11 P.M. on December 22, 1972 and 1:10 P.M. on December 26, 1972 and who suffered damage by reason of any of the wrongful acts alleged in the complaint.

We find, therefore, that this action may be maintained as a class action. Plaintiff is directed to give individual notice of this action to all members of the class who can be identified through reasonable effort. Notice by mail is the best method.

The notice shall advise each class member that if he so requests, within two months from the receipt of notice, he will be excluded from the class; that the judgment, whether or not favorable to the class, shall bind all members who do not request exclusion; and that any member who does not request exclusion may appear through his counsel. The cost of such notice shall be borne by plaintiff.[36]

The form of notice, as set forth in Katz v. Carte Blanche Corp., 53 F.R.D. 539 (W.D.Pa.1971), shall be submitted to the court for approval on or before April 1, 1974.

Accordingly, defendants' motion to dismiss Counts IV and V of the complaint is granted. Plaintiff's motion for a class determination is granted. Notice to the above-defined class shall be given by plaintiff, and he shall bear the cost of said notice.

So ordered.

36. Rule 23(c)(2), Fed.R.Civ.P.; Eisen v. Carlisle & Jacquelin, *supra*, 391 F.2d 586; Eisen v. Carlisle & Jacquelin, *supra*, 479 F. 2d 1005; Hawk Industries, Inc. v. Bausch & Lomb, Inc., 59 F.R.D. 619 (S.D.N.Y.1973).