**IRVING TRUST COMPANY and Fidelity
and Deposit Company of
Maryland, Plaintiffs,**

v.

**NATIONWIDE LEISURE CORPORA-
TION, et al., Defendants.**

No. 79 Civ. 0261 (WCC).

United States District Court,
S. D. New York.

Dec. 7, 1981.

---

**14.** If Costas' counsel are paid on other than a time basis, that information should be included as well.

A. Edward Grashof, Winthrop, Stimson, Putnam & Roberts, Susan Egan, Stephan B. Wells, New York City, for plaintiff Irving Trust Co.

Thomas A. Dickerson, New York City, for class claimants.

Henry James Wallach, Hart & Hume, New York City, for plaintiff Fidelity and Deposit Co. of Maryland.

George Berkowitz, P. C., New York City, for Capitol Int'l Airways, Inc.

Steven Rothenberg, Civil Aeronautics Board, Washington, D. C., William J. Brennan, Asst. U. S. Atty., New York City, for defendant United States of America.

Katherine Posner, Condon & Forsyth, New York City, for Aviaco Airlines.

Richard G. Kent, Pullman, Conley, Bradley & Reeves, Bridgeport, Conn., for claimants Mr. and Mrs. Neal Kaye.

Larry M. Carlin, New York City, for defendant Nationwide Leisure.

Lee A. Pollock, Hale, Russell, Gray, Seaman & Birkett, New York City, for claimant Hughes Air Corp.

Seymour Wasserman, pro se.

## MEMORANDUM OPINION ON CLASS CERTIFICATION REARGUMENT

KENT SINCLAIR, Jr., United States Magistrate:

This memorandum addresses the motions for class certification in this action. This court had preliminarily recommended that no classes be certified, see Recommendations On Motions Concerning Class Matters, dated December 30, 1980. Then, after a motion for partial reargument on class certification of the putative Dupack, Low, Reiken and Klakis classes was granted and heard, numerous filings were received over a period of several months and oral argument was held. Also, the putative classes conducted discovery on issues raised by them with respect to the adequacy of interpleader notice to persons within the putative classes.[1]

For the reasons that follow, it will be recommended that three classes be certified herein. The recommended class definitions, subject to any definitional suggestions received within twenty (20) days and adopted by the court, will be as follows:

Class 1: (Low and Reiken) All participants in Nationwide charter tours to London, England during the period February 4, 1977 through December 2, 1977 who were not lodged in the Kensington Close Hotel, the Part Plaza Hotel, the Royal Kensington Hotel, or a similar hotel.

---

1. No reargument was sought as to the recommended dismissal and denial of certification as to Goodman and Eichenbaum putative classes or the putative Richman classes. The original allegations of all the putative classes are covered in detail in the court's December 30, 1980 Recommendations.

*Class 2:* (Dupack) All participants in a Nationwide charter tour to Munich, Germany during the period April 1, 1977 through November 5, 1977 who were not lodged in a Holiday Inn or similar hotel.

*Class 3:* (Klakis) All participants in the single Nationwide charter tour to Nassau and Paradise Island scheduled for January 22, 1978 through January 26, 1978.

The above definitional frameworks are subject to modification, and no final recommendation of certification shall be made until after the parties' time to comment thereon has run. Further, counsel for the putative classes shall have five (5) days to submit replies to timely comments of other parties. Discretion to recommend decertification at a future date does, of course, remain. *See* Rule 23(c)(1).

1. *Background.*[2]

About one year prior to the commencement of this interpleader action, seven purported class actions were filed in New York courts against Nationwide Leisure Corporation ("Nationwide"). The suits charged Nationwide, a purveyor of charter tours, with fraud, breach of contract and negligence in connection with Nationwide's alleged failure to deliver various promised services, ranging from hotel accommodations to ground, air and sea transportation. Also named as defendants in some of these lawsuits were Irving Trust Company ("Irving") (which acted as depository bank for Nationwide) and Fidelity and Deposit Company of Maryland ("Fidelity") (which had issued a $200,000 surety bond for the benefit of Nationwide customers, as required by federal regulations governing tour operators).

After the state actions were instituted, and at the request of Nationwide, Fidelity issued a $200,000 rider to the bond issued in compliance with Nationwide's obligations under regulations of the Civil Aeronautics Board. This rider was issued "solely for the benefit" of the state class action plaintiffs and their alleged classes. *See* Amended Complaint . . . , at ¶ 15.

Thereafter this interpleader action was commenced. At first, only the escrow funds held by Irving as depository bank and amounting to $72,458.60 and the surety bond in the penal amount of $200,000 were interpleaded. Then the state actions were stayed and the rider amounting to $200,000 was interpleaded. *See* Recommendations On Motion For Leave To Amend, dated December 16, 1980; Amended Complaint.

Until the summer of 1980, the state action plaintiffs vigorously resisted all attempts to bring their claims before this court. *See, e.g.,* Dickerson letters of February 8, 1979 and April 22, 1980. Then the state plaintiffs reversed their position, and, the purported class representatives in the state actions having already been named as defendants in the interpleader action, sought certification of class claims against the interpleaded funds and class cross-claims against interpleader defendants Nationwide, Graff and Nadel.

On December 30, 1980, this court recommended that the putative classes not be certified. The court's reasoning was set forth in detail in the Recommended Decisions On Motions Concerning Class Matters, but the essential points can be briefly recounted. As to the putative Klakis class, the court took cognizance of the then unchallenged representation of a Nationwide principle (which was mentioned by the state court in the Klakis state action) that all but twenty-one Klakis class members had settled and on that basis found that the Rule 23 numerosity requirement was not met. As to the other classes, there was no basis before the court in the Fall of 1980 for a finding that the class representatives' claims were typical, that common issues would predominate, or that the class mechanism was superior to an interpleader mechanism which the court was given to believe had been reasonably calculated to result in notification to all those with claims against the interpleaded sums. *See* Rule 23(a)(3), 23(b)(3).

---

2. For more complete background information, see Complaint, dated January 16, 1979, Amended Complaint, dated April 13, 1981, Recommended Decisions On Motions Concerning Class Matters, dated December 30, 1980; Recommended Decision On Motion For Leave To Amend, dated December 16, 1980.

Considering the concessions made by the putative classes on reargument (essentially, narrowing the certifications sought to groups with clear commonality of interests and common factual questions) and the new showing they have made with respect to the Klakis numerosity issue and the value of introducing some class mechanisms within this interpleader action, it will be recommended that three classes with, at a minimum, the definitional limitations set forth in the introduction, be certified. Formal recommendation will not be made, however, until the court has the benefit of all parties' comments filed within twenty (20) days.

**2. *Resolution of Issues Raised by Reargument.***

■ The putative classes bear the burden of establishing each element of Rule 23 for certification. *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Rule 23(a) requires, as prerequisites to the maintenance of a class action, that the putative class demonstrate that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims ... of the representatives are typical of the claims ... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, the putative classes must show, pursuant to Rule 23(b)(3) (the portion of Rule 23(b) upon which the putative classes rely), that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

**3. *Rule 23(a) Prerequisites.***

**a. *Numerosity.***

■ It has never been doubted that the Low, Dupack and Reiken classes—each of which has putative members in the hundreds or thousands—satisfied the numerosity prerequisite. However, when motion for certification was first brought on, the court was given to believe that only twenty-one people were in the putative Klakis class, everyone else having settled. Now, the putative Klakis class argues that none, or only a few, Klakis class members have settled, and despite ample opportunity, Nationwide has been unable to support the proposition that more than a handful of persons in the Klakis class have settled. Thus, since about 280 people took the Klakis flight and no *evidence* of widespread settlement has been brought forth, there is no basis for a finding that the numerosity requirement is a bar to certification of the Klakis class.

**b. *Common Questions.***

■ During the briefing on reargument, common questions of law and fact have sprouted like dandelions in May; *e.g.*, surety bond and rider coverage (notice requirements as a defense; effect of notice on travel agent; whether any breach of contract covered, or just cancellations and complete non-delivery; who is covered by rider; meaning and effect of decision in Appellate Division on coverage); liability of Nationwide for carrier and hotel failures of services; elements of a fraud action; construction of applicable federal regulation and statutes, including whether a private right of action exists; the circumstances surrounding the diminution of vacation allegedly suffered by the Klakis class; whether the hotel switching course of conduct alleged existed; whether the allegedly inferior hotels were "similar" to the ones specifically named in the brochures.

**c. *Typicality.***

This prerequisite is satisfied by a showing that the putative class representatives and putative class members have the same or similar grievances. *See* Recommended Decision on Motions Concerning Class Matters, at p. 22. The inquiry into typicality re-

quires a comparison of the hypothetical or actual claims of the putative representative with those of the putative class. *Id.*

When certification was initially sought, the putative representatives (aside from Klakis [3]) sought to represent thousands of persons with multifarious claims, ranging from allegations of non-delivery of hotel accommodations (hundreds of hotels, some identified and some not, in several different countries and cities) to allegations of non-delivery of transportation (trains, boats, planes, jets, hydrofoils). No assurance was offered that the non-deliveries suffered by putative class representatives for which Nationwide is allegedly chargeable were also suffered by putative representees. For instance, the only showing made with respect to the typicality of putative representatives' hotel switching claims was the submission of portions of a Federal Trade Commission report which, instead of containing grounds for a typicality finding, alleged that Nationwide's customers were switched to a wide variety of hotels in different places and that the causes for the hotel switches were diverse and usually the result of over-booking by the *hotels.* These barriers to a finding of typicality were heightened by the putative classes' failure to describe in detail a coherent legal theory of recovery, *e.g.*, if the hotel switch was caused by overbooking, is the claim against the fund, Nationwide, Graff and Nadel or against the hotel?

▪ Now that the putative classes have narrowed their claims and begun to flesh out their legal theories, the major barriers in the way of a typicality finding have been lifted. Only hotel switching remains as a class claim, so there is assurance that the same alleged injury suffered by class representatives for which Nationwide is charged was suffered by class representees. The number of hotels has been shown to be finite. The hotels involved are identifiable.

And even if representees were switched to different hotels than representatives, their claims would still be, except for damages, the same as the representatives' claims. Further, the class claimants have clarified their position that the funds and defendants Nationwide, Graff and Nadel are chargeable even where the hotel overbooked, obviating the possibility that the claims of representatives and representees would be against different parties (some of which would have to be brought in) and would rest on wholly different factual and legal bases.

One element of typicality—the requirement that the interests asserted by the representatives not be antagonistic or conflicting with those of the purported class [4] —may, however, be problematic and while not barring certification, may necessitate sub-classing of all three classes. The potential antagonism or conflict between representatives and representees arises from the assertion by Fidelity, Nationwide, Graff and Nadel that no claimant may recover against the bond or rider unless he notified Fidelity or Nationwide of his claim within sixty (60) days after the completion of the charter or tour to which the claim relates. If this assertion is valid there would be a conflict of interest between a representative who gave notice and a representee who did not. This conflict could arise if, due to the finite amounts interpleaded and the total number of claimants, only pro rata recovery is possible: it then would be in the representative's interest to insist on the notice requirement as a means of minimizing the number of interpleader claimants in order to maximize pro rata recovery or to make possible full recovery. Similarly, a representative who did *not* give notice might want to maximize his recovery by insisting on the invalidity of the notice requirement. The potential conflict or antag-

---

**3.** It has never been doubted that the Klakis class—composed of those who took a single flight and suffered diminution of services—has representatives whose claims are typical.

**4.** *See, e.g., Tomkin v. Kaysen,* 69 F.R.D. 541, 542 (S.D.N.Y.1976); *Gates v. Dalton,* 67 F.R.D. 621, 630 (E.D.N.Y.1975); *Lynch v. Sperry Rand Corporation,* 62 F.R.D. 78, 84 (S.D.N.Y.1973); *Mersay v. First Republic Corp. of America,* 43 F.R.D. 465, 469 (S.D.N.Y.1968); 1H. Newberg, Class Actions 1120(k) (1977).

onism exists only as to claims against the bond and rider, and could, if necessary, be eliminated by classing those who gave notice apart from those who did. This notice issue does not affect the class cross-claims, since no party has suggested that notice is a precondition to recovery against Nationwide, Graff and Nadel.

■ Of course, if the notice requirement does not give rise to a valid defense, no sub-classing would be necessary. Therefore, the validity of the notice requirement as a defense against recovery on the bond and rider is an issue which must be resolved early, so that it can be determined whether sub-classing is necessary. Another reason to resolve this issue immediately is that it affects the claims of interpleader defendants who are not class members, and at least one party has suggested that a determination as to notice is a threshold issue which must be reached before any claim is resolved. *See* Omnibus Brief of Defendant Nationwide . . ., at 6–7. Although no formal motion has been made to strike the notice requirement as a defense or for other, similar relief, the court has the power to resolve this issue on its own motion, *see Leonhard v. United States*, 633 F.2d 599, 609, n.11 (2d Cir. 1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981) (sua sponte dismissal of complaint); *Dodd v. Spokane County, Washington*, 393 F.2d 330, 334 (9th Cir. 1968), so long as notice and an opportunity to be heard · is provided interested parties. If this case is

to be prevented from becoming more of a Frankenstein monster than it must inherently be, issues affecting class certification should be resolved without delay and not when one of the parties decides that the time is ripe from its strategic point of view. This is true particularly where, as here, no matter outside the pleadings except for the content of certain federal regulations need be considered [5] and there do not appear to be any disputes about the facts material to a resolution of the issue. Pursuant to the court's request, some of the parties have already presented arguments on this issue. Any party desiring to make further submissions on the issue of the sixty (60) day notice requirement in the bond or rider may do so within twenty (20) days.

d. *Adequacy of Representation.*

■ This prerequisite is no bar to certification. Whether potential antagonism or conflict exists is relevant here as well as to the typicality prerequisite, but this potential problem would, at most, necessitate sub-classing. The putative representees have submitted affidavits demonstrating an understanding of this action, and class counsel, who has wide experience in the realm of consumer travel class actions, is clearly able competently to prosecute these actions on behalf of the classes.

■ In conclusion, the putative classes' claims and representatives are such that the prerequisites of Rule 23(a) are satisfied.[6]

---

5. Copies of the bond, rider and standard form tour participant contract were attached to and made a part of the pleadings.

6. Defendant Nationwide argues that the putative class representatives do not have standing to sue on behalf of all putative class members. The thrust of this argument appears to be that some class members were allegedly switched to hotels A and B while the putative representatives were allegedly switched to hotels C and D and therefore the representatives do not share in the injury suffered by all putative class members. Defendant relies on some state decisions construing New York State class action requirements.

Although not an express prerequisite to the maintenance of a class action, standing is required of a class litigant just as it is required of

every litigant. The representatives here all have standing. They have a personal stake in the outcome of the controversy, *see Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2203, 45 L.Ed.2d 343 (1974), they are members of the class they purport to represent, and they claim injury flowing from the alleged class wrong. *See Sosna v. Iowa*, 419 U.S. 393, 402–03, 95 S.Ct. 553, 558, 42 L.Ed.2d 532 (1974). Generally, when the Rule 23(a) prerequisites are met, there will be standing, since those prerequisites demand that the plaintiff allege injury resulting from a class wrong. *See* 1H. Newberg, *supra*, at 1120(K); Reply Memorandum Of Law by Class Action Defendants, dated September 25, 1980, at Appendix A, pp. 6–8.

### 4. *Rule 23(b) Requirements.*

#### a. *Predominance of Common Questions.*

 There are many common questions, and possible individual questions identified include only (a) whether claimants gave notice; and (b) damages. Unless and until it is determined that failure to give notice within sixty (60) days of tour completion bars claims now, the notice requirement would not present individual questions, and even then it would appear that sub-classing would make the issue of notice not a trial issue but simply part of any class claimants' normal burden of proving class membership. Except in an unusual case, the fact that damages present individual issues will not defeat certification. *See Green v. Wolf Corp., supra,* 406 F.2d at 301 (damages issues severable); *Cutner v. Fried,* 373 F.Supp. 4, 12–13 (S.D.N.Y.1974); *Herbst v. Able,* 47 F.R.D. 11, 17 (S.D.N.Y. 1969); Advisory Committee Note, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1966); 3B Moore's Federal Practice ¶ 23.46[2] at p.23–407 (2d ed. 1981) (securities actions). Accordingly, the predominance requirement is met.

#### b. *Superiority.*

"That common questions predominate is not itself sufficient to justify a class action under subdivision (b)(3), for another method of handling the litigious situation may be available which has greater practical advantages ..." Advisory Committee Note to Proposed Rule of Civil Procedure 23, *reprinted* at 39 F.R.D. 98, 102–03 (1966).

The putative class claimants paid little, if any, attention to this important consideration when they first sought certification. That they were seeking certification in the midst of an interpleader action well along toward fruition was a fact largely ignored by the class claimants. Because the court was given to believe that all possible tour participant claimants had been joined as interpleader defendants and because of the cornucopia of individual issues raised by the initial certification motions, it could not be said on the record presented to this court in 1980 that the class mechanism promised any benefit.

 The intervening year has brought a gross reduction in the scope of class questions for which certification is sought, new facts from discovery, and newly presented legal authority. Thus it may now be found that reliance on some class mechanisms will result in substantial benefits. First, since additional common issues have been identified and numerous individual issues eliminated by the putative classes streamlining of their claims, it appears that litigation of issues and proof of claims through the class mechanism will result in substantial economies of time, cost and effort. *See Russian Travel Bureau, Inc. v. Marshall Grossman, et al.,* 16 Aviation Cases (CCH) 17,655 (S.D.N.Y.) (Pierce, J., Opinion and Order dated April 10, 1980) (utilizing class mechanisms within interpleader action) and cases cited in Plaintiffs' Supplemental Memorandum Of Law Re: Motions To Reargue And Renew Prior Motions Re: Class Certification, dated August 5, 1981. Second, it appears that class certification will advance the equitable goal of permitting all those with a claim against these limited funds an opportunity to assert their claims. *See* Reply Memorandum Of Law In Support Of Motion To Renew And Reargue The Motions Of Claimants Reiken, Dupack, Low and Klakis Seeking Certification of Class Claims and Class Cross-Claims, dated March 24, 1981, at pp.4–20. Since their discovery into Nationwide's claims handling procedure, the putative classes have come forward and shown that many putative class members who may have claims against the interpleaded funds have not been notified of this action. First, it was Nationwide's policy to reply to complaint letters about hotel-switching and flight delays with a letter denying liability for such occurrences. Nationwide did not view these complaints as claims and may never have told plaintiffs about them. *See* Supplemental Affidavit In Support Of Motions Seeking Renewal And Reargument ..., dated August 5, 1981, at ¶ 10 and Exhibits A, B, C; Memorandum Of Law Of Nationwide Leisure Corporation Submitted in Response ...,

(undated), at 1–5 (arguing that hotel switching and flight delay complaints were not valid claims). Since plaintiffs apparently did not know about the bulk of these complaints, plaintiffs were not able to serve notice on the complainants. A second reason to doubt that every class claimant has been served is that when Nationwide moved out of its offices in 1978, large numbers of documents were lost and destroyed. Among these may have been claim documents, and plaintiffs could not have known about these.

 Fidelity does not know whether Nationwide handled complaints properly or told Fidelity about all of them, Affidavit of Steven A. Weissman, dated October 7, 1981, but Fidelity argues that, given the lapse of time since Nationwide's demise and the extensive publicity about widespread customer dissatisfaction with Nationwide tours, anyone who wanted to press a claim would have complained or sued by now. *Id.*; Affidavit of Henry James Wallach, dated October 9, 1981. The persuasive force of this position, however, is attenuated because some class members may have complained to Nationwide but not been served because Nationwide never told plaintiffs about their claims. Further, that few individual hotel-switching suits were brought against Nationwide seems less suggestive of a lack of interest in asserting legal rights than of the possibility that, without the class mechanism, a lawsuit would be economically impracticable because not enough damage was suffered by individual class members. *See Cutner v. Fried, supra,* 373 F.Supp. at 13.

Another point made by Fidelity is this:

Even assuming for the sake of argument that there are possibly thousands of persons with claims against NLC who are not parties to this action (an assumption contrary to fact and logic, as set forth in the affidavits of Steven A. Weissman sworn to October 7, 1981 and Larry M. Carlin sworn to October [9], 1981), that supposed "fact" is totally irrelevant to the question here under consideration—whether to certify [the] classes.

Affidavit of Henry James Wallach, dated October 9, 1981, at p.2. The connection perceived by the court between the existence of numerous strangers to this action who may be claimants to the fund and the certification of classes is the court's responsibility to insure, within practicable limits, that the fund now with the court is not distributed inequitably. Interpleader is an equitable device, and its objectives go beyond protection of a stakeholder—especially where, as here, the court's restraining power under 28 U.S.C. § 2361 has been invoked and this litigation may be the only way that claimants can get any sort of recovery. *See Maryland Casualty Co. v. Glassell-Taylor & Robinson,* 156 F.2d 519, 523–24 (5th Cir. 1946) (objectives of interpleader are to give "all claimants to the fund, as well as the holder of the fund" protection); *Commercial Union Insurance Co. of New York v. Adams,* 231 F.Supp. 860, 867 (S.D.Ind.1964) ("Two of the prime purposes of the interpleader statute are to avoid multiplicity of actions and to avoid an inequitable division of a common fund when the fund is insufficient to pay all the claims against it.") Here, the court has two $200,000 funds, one created for the benefit of, and another perhaps reachable by, classes of claimants who (except for a few) were never served with notice in this action yet are restrained from prosecuting any other action to prove their claims. Whether Fidelity should be compelled to locate and serve those for whom the rider was created is not a genuine question here: no party has suggested that such a duty is concomitant to Fidelity's position as interpleading plaintiff, and while equity may demand that an effort be made to involve all interested parties, it does not demand that that effort be made twice. (Practically speaking, if Fidelity were to serve class members, class actions might not be possible, since the class members would then be parties and subsequent notices from class counsel to them might raise ethical problems. Even if no such ethical problems existed, waste in the form of double notice would result.) But that putative classes with colorable claims against the funds should be permitted to prosecute those

claims, even though at a cost of substantial delay in the resolution of this action, seems clear, given the objective of equitable distribution of a limited fund among all those with an entitlement.[7]

 c. *Class Claims, Cross-Claims and Jurisdiction.*

 The putative classes make claims against the interpleaded bond and rider and cross-claims against Nationwide, Graff and Nadel. The court has jurisdiction over the claims on the bond because they are "action[s] on a bond executed under any law of the United States..." 28 U.S.C. § 1352. The bond and rider were executed pursuant to the requirements of regulations promulgated by the Civil Aeronautics Board, and these regulations constitute "law" within the meaning of § 1352. *See U. S. etc. Miss. Road Supply Co. v. H. R. Morgan Inc.*, 542 F.2d 262, 266 (5th Cir.), *cert. denied*, 434 U.S. 828, 98 S.Ct. 106, 54 L.Ed.2d 87 (1976) (department of interior regulations); *United States ex rel. Empire Plastics Corp. v. Western Cas. & Sur. Co.*, 429 F.2d 905, 906 (10th Cir. 1970). Moreover, federal question jurisdiction is alleged and has not been challenged.

 The cross-claims clearly are within Rule 13, since the cross-claims arise out of the same transaction or occurrence that is the subject matter of the class claims on the bond and rider, *see* Rule 13(g), and therefore they fall within the ancillary jurisdiction of the court. *See* 3 Moore's Federal Practice, *supra*, at ¶ 13.36 (jurisdiction which supports principal claim supports related cross-claim). Alternatively, considering that the cross-claims and claims derive from a common nucleus of operative fact and that, as they attempted to do in state court, the class claimants would ordinarily claim against the surety funds and Nationwide, Graff and Nadel in one action, pendant jurisdiction may be exercised, since economy, efficiency and fairness would thus

be advanced. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

 5. *Notice.*

 Notice must be financed by the class claimants. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356–58, 98 S.Ct. 2380, 2392, 57 L.Ed.2d 253 (1978); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1973). However, class claimants may apply to this court for an order shifting the costs of some class member identification procedures, if the situation is a proper one for such a cost shifting. *See Oppenheimer, supra*, 437 U.S. at 356–64, 98 S.Ct. at 2392. And, of course, if the class claimants prevail, an application to garner costs and fees from the recovery fund can be made.

 The form and procedure of notice may be that set forth in ¶¶ 26–29 of the Dickerson Reply Affidavit of March 24, 1981, or another form proposed by counsel and approved by the court. If Judge Conner adopts the class certification recommendations, notice shall be mailed within sixty (60) days of the date of that adoption.

## CONCLUSION

 Any interested parties may make submissions on class definition or the asserted sixty-day notice requirement within twenty (20) days. *See, supra,* at pp. 104–105; 107–108. Upon receiving these submissions, recommendations on these matters shall be made. Since this Memorandum Opinion makes no final recommendations, parties are requested to reserve any objections to Judge Conner on the matters raised in this Memorandum Opinion until further recommendations on class definition and the notice requirement are made.

---

**7.** Class counsel also argues that many persons who are *not* class members but nevertheless have claims were not made parties. Class counsel has no standing to make this argument, and, in any event, the showing upon which it is based fails to raise doubt that substantial num-

bers of non-class members with claims were not notified of this action. *See* Carlin Supplemental Affirmation, dated October 9, 1981; Wallach Aff. of October 9, 1981; Weissman Aff. of October 7, 1981.